### RADCLIFF and others *vs.* ROWLEY and others.

The sale of real estate, by a sheriff, upon an execution against the nominal owner thereof, conveys an apparent legal title to the purchaser, which can only be displaced by the evidence of witnesses, whose testimony may soon be lost by lapse of time. A person, therefore, claiming to be the owner of real estate, which has been thus sold under an execution, upon a judgment improperly obtained, may come into a court of equity for the purpose of obtaining a decree to quiet his title to the premises, and to remove the cloud therefrom.

In a bill for relief on the ground of fraud, it is not necessary that the complainant should allege that he has discovered the fraud complained of, within six years. And a demurrer will not lie to such a bill, although it appears that the fraud occurred more than six years before the commencement of the suit, unless it also appears, at least by necessary intendment, that the fraud was discovered, by the party aggrieved, more than six years before he filed his bill for relief. Where that does not appear, the defendant must be left to make his defence by plea, or answer, so as to present an affirmative issue, upon the question as to the discovery of the fraud by the complainant.

Upon a general demurrer to a bill, for relief upon the ground of fraud, it is not necessary to inquire whether some grounds of relief stated in the bill do not appear, upon the face thereof, to be barred by lapse of time. If that question is sought to be raised, on demurrer, it must be done by a separate demurrer to those particular part of the bill.

THIS was an appeal, by the defendant Rowley, from a decretal order of the vice chancellor of the first circuit, overruling a demurrer to the bill of the complainants.

In 1812, W. Radcliff purchased of G. Van Benthuysen a lot of land in Otsego county, and received from him a conveyance in fee, with warranty. Radcliff gave back a mortgage, on the west 260 acres of the lot, to secure a part of the purchase money. That mortgage was afterwards foreclosed, and the mortgaged premises were bid in by the defendant Rowley, in January, 1821, but as the bill alleged, for the benefit of Van Benthuysen. At the time of the first mentioned sale to Radcliff, in 1812, there were two outstanding judgments against Van Benthuysen, which were liens upon the whole premises. And the bill alleged, that after the mortgaged premises had been conveyed to Rowley under the statute foreclosure, for the benefit of Van Benthuysen, Rowley paid the amount of the judg-

ments, to the owner thereof, with the funds of Van Benthuysen which he then had in his hands as the agent of the latter; and that, with the intention of defrauding both Radcliff and Van Benthuysen, the defendant Rowley took an assignment of the judgments, in his own name, and caused the part of the lot not covered by the mortgage to be sold under executions upon the judgments, and became the purchaser thereof for his own benefit, in April, 1821. The bill also charged, that Rowley caused that part of the lot to be sold, on the executions, without any notice to Radcliff of the existence of the judgments, or of the proceedings thereon, and intentionally concealed a knowledge of the facts from him; and for that purpose that he issued the executions irregularly, without having revived the judgments by scire facias; that, at the time of the issuing of such executions, Van Benthuysen was the owner of valuable real estate in the counties of Warren and Essex, and also in the county of Dutchess, where he resided, upon which estate the judgments were then liens, and which lands should have been first sold to satisfy the judgments, if any thing was due thereon as against Van Benthuysen. The bill also stated the commencement of a suit in the court of chancery by Van Benthuysen against Rowley, in 1831, for an account; charging the defendant in such suit with various frauds, and claiming, among other things, the land purchased in by Rowley on the before mentioned executions; that a decree was made in that suit, in November 1834, deciding that Van Benthuysen was the beneficial owner of the land so purchased in, and that Rowley only held the title as trustee for him, and directing Rowley to convey to him under the direction of a master, and that the same was so conveyed in January, 1839; but that under an order made in that cause, subsequent to the decree, and before the deed had been given, an endorsement was made upon the deed, by the master, stating that the land thereby conveyed was subject to a lien, in favor of Rowley, for such balance as might be found due to him under the decree in that suit. Radcliff died in possession of the premises in controversy, in July, 1842, and the complainants in this suit, as his heirs, then went into possession thereof, and were in such

Radcliff *v.* Rowley.

possession at the time of filing their bill in this cause, in September, 1844. A final decree was made in the suit of Van Benthuysen against Rowley, in November, 1840, by virtue of which the latter claims a lien upon the premises in question for the balance decreed in his favor. Van Benthuysen died in March, 1841, and the suit was revived, by Rowley, against his representatives and heirs. And the defendant Rowley, at the time of the commencement of this suit, was proceeding to have the premises which were so purchased in by him, on his executions, sold, under the decree in his favor against Van Benthuysen. The other defendants were the mortgagees of the premises, claiming under Rowley, and as the bill alleged were not bona fide mortgagees without notice of the complainants' rights.

The complainants prayed that they might be quieted in their title to the premises in controversy, against the claims of the defendants, and that the defendants might be decreed to relinquish their pretended liens upon the premises, under the decree against Van Benthuysen and the mortgage of Rowley, or for such relief as the complainants were entitled to upon the case made by their bill. The defendant Rowley demurred to the whole bill for want of equity. He also stated, as a special ground of demurrer, that the causes of complaint stated in the bill arose more than ten years before the commencement of this suit, and that the acts of fraud, charged in the bill, were known to Radcliff, the ancestor of the complainants, in his lifetime, and were discovered by him more than six years before his death, and before the filing of the bill in this cause.

The following opinion was delivered by the vice chancellor:

W. T. McCoun, V. C. There are two principal grounds of demurrer in this case: 1. Want of equity in the bill. 2. That the relief is barred by the statute of limitations; more than six years having elapsed, since knowledge of the facts.

The bill tells the story of a series of frauds practised by Rowley upon his client and principal, Van Benthuysen, and upon the complainants' ancestor, William Radcliff. But it

Vol. II.	4

claims relief only in respect to that portion of the lands which was sold under the executions, upon the Banyer judgments, in April, 1821. The other portion, sold under the mortgage in January, 1821, it does not attempt to reclaim; and if it did, the statute of limitations would be a bar. So with respect to the 260 acres sold under the executions, if by that proceeding the complainants or their ancestor had been dispossessed of the land, and the object of this bill was to set aside the sale, and to be restored to the possession and ownership of the land, there would seem to be no necessity for coming into this court, or at this late day the claim to such relief would be barred by the statute.

But the bill shows that notwithstanding the sheriff's sale, and the failure to redeem in 1822, the ancestor of the complainants remained in the undisturbed possession, down to the time of his death, in July, 1842. In the mean time a litigation took place between Rowley and Van Benthuysen; and as between them, the latter was adjudged to be the owner, subject to the lien or charge of the former, for the balance of his account. And subject to that charge, Rowley conveyed to Van Benthuysen on the 17th January, 1839. Thus Van Benthuysen became vested with the legal title, and as between him and Radcliff, an equity arose, that the latter should be protected against that legal title, by reason of Van Benthuysen's covenants and warranty, in his original deed to Radcliff.

It then appears, that since the death of Radcliff, his heirs, the complainants, have remained in the undisturbed possession of the land, and that Rowley has obtained a decree for the balance due to him from Van Benthuysen. This decree was made on the 24th of November, 1840, and was enrolled on the 14th of September, 1842. Van Benthuysen died on the 14th of March, 1841, and Rowley is proceeding to a sale of the land under that decree, which sale is advertised for the 17th of September, 1844. This proceeding of Rowley, and the sale he has advertised, operate to the prejudice of the title of the complainants, and to their possession and the use and enjoyment of the property—and they therefore claim to be protected in that

Radcliff *v.* Rowley.

possession and enjoyment, as against Rowley, and also against his mortgagees, the Messrs. Crafts.

The bill appears to me to show a strong case for that purpose, as against these parties. A case, too, of which chancery has jurisdiction, on the ground of removing clouds from the title of the complainants, and obstacles in the way of their full enjoyment of the property; which is an acknowledged head of equity. (*See Mayor, &c. of Brooklyn* v. *Meserole*, 26 *Wend.* 137. *Van Doren* v. *Mayor of New-York*, 9 *Paige*, 389, 390.)

I am of opinion, also, that this case for equitable relief may well be considered as having arisen when Rowley undertook, or threatened, to enforce the decree, for his balance, against the land in question; or that an equity arose to Radcliff, to have the land exonerated from all claim of Van Benthuysen, and of Rowley as his creditor, the moment Rowley conveyed it to Van Benthuysen, by his deed of the 17th of January, 1839. This was within six years of the time of filing the bill.

The demurrer must, therefore, be overruled, with costs.

*B. F. Butler*, for appellant. There is no equity in the bill, to entitle the complainants to the relief sought by it.

If there be any such equity, it is barred by the statute of limitations, for the reasons set forth in the demurrer.

*A. H. Dana & A. C. Bradley*, for respondents. As to the lapse of time, which is assigned for cause of demurrer. Limitation of time by statute is not a bar to the jurisdiction of the court; but is only a defence which may be set up in pleading, or otherwise. It cannot be insisted upon for the first time at the hearing. It is not like the case of a specified amount that the court will alone take jurisdiction of; where if it appear at the hearing that the amount in controversy is below that sum, the bill will be dismissed. This defence should properly be made by plea or answer. A demurrer raises only such objections as would be ground for dismissing the bill, at the hearing, for inherent defect. (*Mitf.* 272. *Prince* v. *Heylin*, 1 *Aikin*, 494.) This demurrer rests mainly upon the limitation of six years,

for applying for relief from fraud; but the case made by the bill does not show that the limitation applies. Although it states transactions of more than six years since, it does not show that the complainants have had knowledge of them six years. This is necessary to be stated. (2 *R. S.* 229, 2d *ed.*) The limitation in this case is not like that prescribed as to actions at law. A plea that six years have elapsed, would not be good; it must be averred that the six years have elapsed since the parties had knowledge of the facts. Nothing is to be implied, beyond the express statements in the bill. And it is not stated that six years have elapsed since the complainants had knowledge of the facts. A case is not therefore stated that comes within the statute. (*See Story's Eq. Pl.* 448. 4 *Paige*, 374.) It is not necessary, as in the case of the lapse of twenty years, to avoid the effect of it, by an averment showing an exception; for in that case it is presumed to be an absolute bar, unless there was some disability; which is to be shown. And even ignorance of the facts is no answer. (*Humbert* v. *Trinity Church*, 24 *Wend.* 587.) Nothing need be averred but what is susceptible of proof. An averment that complainants had not knowledge could not be proved, if any issue should be made upon it by the answer. The proper issue would be upon an affirmative averment by defendant, that the complainants had knowledge. Such an averment, in this bill, would have been objectionable upon another ground, as requiring proof that another person from whom the defendants derived their right had not knowledge. The bill is not for relief against the original acts of fraud alleged to have been committed by defendant, taken by themselves. The possession of complainants is sufficient against any claim of right claimed therefrom. But the defendants claim now upon a new ground; viz. a decree of this court, made in 1840. It is not attempted to impeach that decree; but as complainants were not parties thereto, and not bound thereby, they seek to show that the attempt made by defendants, under color of that decree, is fraudulent as against them. The matters set up by the bill would be a defence to an action of ejectment, if it should be brought by defendants for recovery of possession.

*Radcliff v. Rowley.*

But such a suit may not be brought; and the existence of the claim impairs the title. The transaction as to the mortgage, is of later date. The mortgage appears to have been given in 1831. The evidence of it was recently furnished to complainants. The lapse of time since the mortgage was given is not the question. The mortgage was dormant, as no claim was made under it. It became material only when the new claim was set up by Rowley. The transactions involved may be considered as continuous, from 1821, when the sale took place under the judgment, till the present time, when a new sale is attempted under a decree in the suit with Van Benthuysen. And the complainants are in time if they have proceeded within six years from consummation.

As to the other grounds of demurrer. This bill may be regarded in the nature of a bill of interpleader, or a proceeding supplemental to the suit between Van Benthuysen and Rowley. There is no impeachment of the decree. The rights of other parties are to be considered. The decree is valid as between the parties to that suit; but it may be inoperative as to others. The real question is, whether the decree of the court settling that Van Benthuysen, and not Rowley, was the owner of the land in question, has not now put an end to the original controversy, and whether defendant is not now limited to a lien upon whatever right Van Benthuysen had, which these complainants say was none at all against his own conveyance with warranty. There may be surplusage in the bill in respect to former proceedings, but that should be the subject of exceptions for impertinence. The mere statement of frauds long since committed, is no objection to a claim for relief against a new attempt to carry them into execution. The demurrer cannot be sustained in part only. And being clearly not well taken as to some portions of the bill, it should be overruled.

The Chancellor. If the bill intended to charge, in this case, that nothing was due upon the mortgage at the time of the sale under the statute foreclosure, and that charge was true, the sale was a nullity; and the ancestor of the complain-

ant had a perfect defence at law to an action to turn him out of possession. And after such a lapse of time it is too late to seek relief in any court. If any thing was due upon the mortgage, the foreclosure was regularly made, and cannot be disturbed upon the ground that the appellant represented to the bidders that he was about to bid it in for the benefit of the mortgagee; which representation, as I infer from the bill, was true at the time it was made. If so, there was no fraud in the purchase; but the fraud, if any, was a subsequent fraud, upon Van Benthuysen, in withholding the property from him. For the foreclosure being regular, and no false representation having been made to prevent competition, Van Benthuysen was entitled to the mortgaged premises at the price for which they were struck off to his agent or trustee.

This part of the bill, however, may be material for another purpose, and I presume that was the object for which these charges were inserted in the bill. The appellant subsequently caused the other half of the lot, which had been conveyed to Radcliff with warranty, to be sold under the executions against Van Benthuysen, whose property was primarily liable for the payment of the judgments. And if Van Benthuysen was then the beneficial owner of the mortgaged premises, under the statute foreclosure, those premises should have been first sold under the executions. Rowley, who knew the fact, was guilty of great injustice in causing the other half of the lot, which was only secondarily liable, to be sold first and to be bid in for his benefit; even if the judgments belonged to himself, and had been purchased on his own account and paid for with his own funds. But if, as the bill charges, the judgments had been paid for with the funds of the judgment debtor, in the hands of Rowley as his agent, then the judgments, though nominally assigned to him, were in fact paid and satisfied. And causing the lands of Radcliff to be sold upon the executions issued on those judgments, under the circumstances stated in this bill, either with or without the consent of Van Benthuysen, was a gross and palpable fraud; against which a court of chancery ought to relieve the complainants, if their remedy is not barred

Radcliff *v.* Rowley.

by lapse of time. It is therefore unnecessary, for the piesent, to consider what new rights, if any, Radcliff acquired under the decree of May, 1834, in a suit to which he was not a party ; or under the conveyance to Van Benthuysen in pursuance of that decree, and of the order of the 8th of January, 1839.

If the allegations in this bill are true, I am inclined to think Rowley did not obtain the legal title to the premises in question by virtue of the sheriff's sale. If so, the complainants, who are in possession, can successfully defend themselves in any suit at law which may be brought against them to disturb that possession, even as against the mortgagees of Rowley, or against a purchaser under the decree in his favor against Van Benthuysen. But upon that question I do not intend to express a definitive opinion at this time. For if they had a good defence at law, they had also a right to come into equity for relief, to remove the cloud upon their title, caused by the alleged fraud of the appellant. The judgments and executions and the sale by the sheriff give an apparent legal title to the purchaser, and to those who are claiming under him as subsequent mortgagees, which apparent title can only be displaced by the evidence of witnesses ; and that evidence may soon be lost by lapse of time. It is therefore a proper case to come to a court of equity with, for the purpose of obtaining a decree to quiet their title to the premises, and to remove this cloud therefrom. (*See Pettit* v. *Shepherd, 5 Paige, 501, and the cases there referred to.*)

Is the complainant's claim to relief then barred by lapse of time ? This, it will be seen, was not a case of concurrent jurisdiction, in which the right to relief in this court would be barred in analogy to the time allowed for bringing a suit at law. For Radcliff being in possession, at the expiration of the fifteen months after the sheriff's sale, he could not institute a suit at law to try this question of fraud. His only remedy at that time was to file a bill in equity to set aside the sheriff's sale, and thus to remove this cloud, which the appellant's fraud has cast upon his title. One claim to relief is founded upon the alleged fraud, in obtaining an apparently good paper title to the

premises in question, under the forms of law, after Rowley knew the judgments had been paid with the funds of the judgment debtor. It is a case, therefore, so far as the complainants seek relief by removing that cloud from their title, in which, the suit must be brought in this court within six years after the discovery, by the aggrieved party, of the facts constituting the substance of the alleged fraud. (2 *R. S.* 301, § 51.) But it does not appear, on the face of this bill, when W. Radcliff discovered the alleged fraud, or that he ever did discover the fact, now stated by his heirs, that the judgments had been paid by Rowley, as the agent of the judgment debtor, with funds in his hands belonging to the latter, before the sheriff's sale. The bill shows that Radcliff knew of the sheriff's sale within a year or two after it occurred, and that he discovered something, or supposed he had, which induced him to file a bill in this court against Rowley and Van Benthuysen jointly. But it does not appear that it was for the same fraud now complained of. And I think upon a proper construction of the statute, it is not necessary that the complainant should allege in his bill that he has discovered the fraud, complained of, within six years. A demurrer, therefore, will not lie, to a bill for relief on the ground of fraud, although it appears that the fraud occurred more than six years before the commencement of the suit; unless it also appears positively, or by necessary intendment, that the fraud was discovered, by the party aggrieved, more than six years before he filed his bill for relief. Where that does not appear, the defendant must be left to make his defence by plea or answer, so as to present an affirmative issue upon the question of the discovery of the fraud.

This is sufficient to dispose of this case, upon a general demurrer to the whole bill. It is not necessary, therefore, to examine the question whether there are not some grounds for relief, of a recent date, stated in this bill, which could not have been barred, under any provision of the article of the revised statutes relative to the time of commencing suits in courts of equity. Nor is it necessary to inquire whether some of the grounds of relief, stated in this bill, do not appear upon the face of the

bill to be barred by lapse of time. If that question is sought to be raised, on demurrer, it must be done by a separate demurrer to those particular parts of the bill.

The decretal order appealed from must be affirmed with costs.