Cox *v.* Clift.

Same Term. *Before the same Justices.*

Cox *vs.* Clift and others.

It is the settled doctrine of courts of equity to deny relief to a party seeking their aid to remove a supposed cloud upon his title, when, upon the face of the proceedings through which the adverse claim is derived, the law adjudges that claim to be void.

Accordingly, where the adverse claim was founded upon a deed executed by the attorney general, upon a sale of land under a statute foreclosure of a mortgage given to the state, which deed only professed to convey to the purchaser the " remainder," (viz. 36½ acres,) of a lot of 62½ acres, of which 26 acres belonged to the complainant, but, in consequence of an erroneous description, it in fact purported to convey the whole of the 62½ acres ; and it being a case where the attorney general had no right to sell the 26 acres, and the notice of sale embraced only the " remainder," by which title the 36½ acres were known ; and where the testimony to prove the error in the deed was not liable to be lost, by the death of

Cox v. Clift.

witnesses, but consisted of record evidence; *Held* that the attorney general's deed was not a cloud upon the complainant's title, such as to justify the interference of a court of equity.

But the grantee in such deed having, on request, refused to release to the complainant the 26 acres to which he had no right, but instead of so doing he asserted a claim to the whole 62½ acres, and executed a mortgage upon the same, to a third person; *Held also*, that he was not entiled to costs, on the dismissal of a bill filed against him to remove the cloud.

In Equity. This was an appeal by the defendant Clift from a decree of the late vice chancellor of the seventh circuit, requiring the defendant Clift to execute to the complainant, under the direction of a master, a proper release of the lands conveyed to him by John and Thaddeus Bacon, and to pay the costs of the suit, and declaring that the mortgage of the 10th of January, 1838, was a lien upon the 36½ acres of the lot only, and that the complainant's land be forever discharged from all lien or incumbrance by reason of that mortgage. The facts necessary to a proper understanding of the case are sufficiently stated in the following opinion, delivered by the vice chancellor:

B. Whiting, V. C. On the 7th of November, 1796, David Lyman owned lot number 150, Onondaga reservation, and on that day mortgaged the whole lot to the people of the state of New-York, to secure $1645. On the 17th of November, 1813, Bildad Barber became the owner of 62½ acres of the lot, being 49½ rods wide across the east end, subject to a proportionable part of the said mortgage, and on or before that day a new account was opened with him in the comptroller's office, charging him with a proportionable part of the mortgage, pursuant to the statute, and which on that day was $411,25 of principal, and $330 of interest, which interest was then paid. On the 5th day of May, 1821, Barber and wife conveyed to John and Thaddeus Bacon 26 acres, being a part of the 62½ acres lying on the north-east corner of the lot, by a description which begins two rods west of the north-east corner of the lot. On the 29th of January, 1822, a new account was opened with the Bacons for a proportionate part of the mortgage upon that 26 acres,

being $177,75 of principal, and $7,57 of interest, and a certificate issued as is usual in such cases. The land described in this certificate is said to be $27\frac{3}{100}$ acres including one half of a highway, and the land forming the half of the highway makes the difference between the land conveyed by Barber and that described in the certificate. In other respects the lands are the same. The sum charged against the remainder of the 62½ acres upon the comptroller's books, from and after the 19th of January, 1822, was $233,50 of principal, and $9,96 of interest, and since the new account was opened with the Bacons, the residue of the 62½ acres has been known as the remainder of the part for which a new account was opened with Bildad Barber.

On the 14th of December, 1836, the money due and charged upon the remainder being in arrears, the then attorney general, Mr. Beardsley, caused the lands to be advertised for sale on the 8th of June, 1837, by a description thus, (after giving the particulars of the mortgage and the number of the lot,) " The part of said lot to be sold, is the part called and known by the name of remainder of the part for which a new account was opened in the comptroller's books in the name of Bildad Barber." The premises thus advertised were sold in pursuance of the notice, and bid off by the defendant Clift, for $327. They were exposed for sale by that description, and sold by it. The complainant's portion of the mortgage was not then in arrears, and no part of his land was advertised or sold. On the 19th of January, 1838, the attorney general conveyed to Clift the lands so purchased, by this description: a " parcel of land known and distinguished as the remainder of that part of the said lot 150 Onondaga reservation, for which a new account was opened in the comptroller's books in the name of Bildad Barber, being about 49½ rods wide, and extending across the easterly end of said lot one hundred and fifty, and supposed to contain 62½ acres." This description includes the 26 acres as well as the part known as the remainder. It contains the whole of the 62½ acres, out of which the 26 acres being taken, left that part called the remainder. The complainant acquired title to the

26 acres in November, 1830, under Barber and the Bacons, subject to that part of the mortgage charged to that portion of the land, and he went into possession and is still in possession. The complainant has filed his bill setting forth these facts, and alleges that he is apprehensive that Clift will sue him for the possession ; and he further represents that upon the sale, the defendant Clift executed back a mortgage to the People upon the 62½ acres to secure $226,64. That in October, 1838, he executed a mortgage to the defendant Lawrence, for $1350 upon the whole 62½ acres, which last mortgage appears to have been satisfied, since the commencement of this suit, and that the sale and deed by the attorney general to Clift, the mortgages by Clift upon the land, and Clift's pretensions to the ownership of it have embarrassed him, and cast a cloud over his title. That he has tendered a release to Clift which he refused to execute, and prays that Clift may be decreed to execute a release of the 26 acres of land, and that the land may be discharged from the mortgages.

The defendant Clift has answered the bill, and admits the facts as stated, but denies that either by the sale, or by the deed from the attorney general, title to any portion of the complainant's land passed to him, or that he has, or claims, any title to the 26 acres ; that the remainder only was sold, and that his deed conveys only that portion of the lot : and he also denies that the complainant has any title to the two rods of land lying on the east side of his 26 acres, as the Bacons did not convey the same to Barber. He also denies that the mortgages cover any lands except the *remainder ;* that the complainant is not embarrassed by the deed or mortgages; that there is no cloud upon his title ; and that the complainant has a good defence at law, and is not entitled to relief in this court. That the attorney general sold the remainder, and had a right to sell only that part of the 62½ acres is obvious, but that he has conveyed the whole 62½ acres appears from the terms of the deed. It is said that the designation of a portion of the lot by the term *remainder,* controls the subsequent particular description by metes and bounds in the same way that if lot number 150

Cox *v.* Clift.

had been conveyed, a subsequent and more particular description by metes and bounds, if erroneous, would not control the land conveyed, but title to the whole lot would pass. That is doubtless the true construction of the deed, and had the defendant Clift asserted uniformly, by his acts and language, the same pretensions in regard to his title and the extent of his interest, under his deed that he has in his answer, I should regard that as the true construction, and say that the complainant had no reason to come into this court to defend himself against a claim which no one had set up, or to ask the court to dissipate a cloud which though visible, the eye of the law could penetrate. But the defendant has asserted that he claims an interest in the complainant's land under his deed from the attorney general, by no unequivocal acts. Passing by the mortgage to the people for the purchase money, which may be supposed to have been executed under the same mistake as prevailed in drawing the deed, he has mortgaged the land to Mrs. Lawrence, for a sum so large as to preclude the idea that the whole $62\frac{1}{2}$ acres was not considered as security for the money. It matters not that this mortgage has been paid off. It is the *giving it*, and thereby claiming a right to exercise that power over the land which is the significant act; *that* created a cloud, if there was none before. Again, when the parties met to confer about the defendant's claim, he demanded a return of the money paid for the land, and the interest upon it, before he would execute a release of his claim under the deed which is admitted by his answer to have conferred no title. By these acts he alarmed the complainant's fears, and I cannot hold that it was an unreasonable apprehension of impending trouble, for the defendant had a title which he insisted gave him the power to exercise rights over the property of the complainant, and if submitted to, the pretence was calculated seriously to impair the value of his estate; for no man of any prudence would purchase lands over which another asserted even a doubtful claim. It was not a remote and shadowy pretension; for the defendant had a deed of conveyance executed in due form of law, upon the records of the county. He had shown his own confidence

Cox v. Clift.

in the validity of that deed, by using the title acquired by it to obtain money upon its pledge, and in the mortgage which he executed to Mrs. Lawrence, there is no limitation to a *remainder*, but it is upon the whole 62½ acres, *forty-nine and a half rods wide, and extending across the east end of the lot,* and consequently embracing the land of the complainant.   I do not think it an answer to those acts of the defendant Clift; to say he was mistaken, and that his deed did not give him the rights which he pretends to have over the complainant's land.   Now, if he was mistaken, who should incur the hazard and expense of testing and exposing the mistake?   While the defendant would act under his supposed claim, without prejudice to his own interest in, or title to the *remainder*, the complainant might, and probably would, suffer damage from his title to the 26 acres being questioned and disputed.   Whether the deed gave to the defendant a title or not, he has asserted a right rendered wholly inconsistent with the perfect and tranquil enjoyment by the complainant of his share of the lot, and the question remains whether this claim is such a cloud on the complainant's title as this court should by its decree remove from it?   In *Hamilton* v. *Cummings,* (1 *John. Ch. Rep.* 517,) Chancellor Kent remarks, " that the weight of authority and the reason of the thing, are equally in favor of the jurisdiction of the court, whether the instrument is or is not void at law, and whether it be void from matters appearing on its face, or from proof taken in the cause, and that these assumed distinctions are well founded.   It is every day's practice to order instruments to be delivered up, of which *a bad use* might be attempted to be made at law, although they could not even there entitle the holders to recover.

It is nowhere defined what is a cloud upon a title ; it is left to the peculiar facts of each case.   The learned counsel for the defendant insisted, upon the argument, that there was not, and by possibility never could be, any valid claim set up under this deed, and that the apprehensions of the complainant were imaginary and unfounded.   I cannot so view this case; for we have seen that this cloud has once spread itself over the length

Cox v. Clift.

and breadth of the complainant's land, and admitting that it was in his power to dissipate it and protect his estate from its effects; yet, in the mean time he is subjected to annoyance, and the enjoyment of his property is poisoned. This should not continue. The complainant has, in my judgment, rightfully come into this court for relief, and is entitled to the decree prayed for. He has asked the defendant for a release, which he refused to execute, and has thus done all in his power to obtain relief, without litigation. Let a decree be entered, requiring the defendant Clift to execute to the complainant, under the direction of one of the masters of this court, a proper release of the land conveyed to him by the Bacons, in November, 1830; that he pay the costs of this suit, and that the complainant have execution therefor. The attorney general having submitted the rights of the people to the court, the decree must provide that the mortgage of the 10th January, 1838, for $226,64, is a lien upon the remainder only, being $36\frac{1}{2}$ acres of the lot, and that the complainant's land be forever discharged from all lien or incumbrance by reason of that mortgage.

*B. Davis Noxon*, for the appellant.

*Geo. F. Comstock*, for the respondent.

*By the Court*, GRIDLEY, J.   It appears to be now the settled doctrine of the court of chancery, to deny relief to a party seeking the aid of that court, to remove a supposed cloud upon his title, when, upon the face of the proceedings through which the adverse claim is derived, the law adjudges that claim to be void. This question was fully discussed by the chancellor, in the case of *Van Doren* v. *The Mayor, &c. of New-York*, (9 *Paige*, 389,) where he holds this language: " *A valid legal objection appearing* on the face of the proceedings through which the adverse party can alone claim any right to the complainant's land, is not in law such a cloud upon the complainant's title as can authorize a court of equity to set aside or stay such proceedings." To sustain this position, the chancellor cites the case

Cox v. Clift.

of *Simpson* v. *Lord Howden*, (3 *Mylne & Craig*, 97,) in which Lord Cottenham holds the same doctrine, and disclaims jurisdiction to set aside a contract void on its face. The reason assigned for the adoption of this rule is, that the courts of law are adequate to afford relief, and therefore the interference of a court of equity is unnecessary. It does not follow, however, that where the deed which is supposed to cast a cloud upon the complainant's title, affords prima facie evidence of the validity of the adverse claim, and the complainant's defence consists of extrinsic facts, depending on the evidence of witnesses whose testimony may be lost by death, chancery would not grant relief. (*See Radcliff* v. *Rowley*, 2 *Barb. Ch. Rep.* 23.)

In this case the adverse claim of Clift to the complainant's premises is founded upon a deed of the attorney general, executed upon a sale under a statute foreclosure of a mortgage given by David Lyman to the state on the 7th of November, 1796. This mortgage covered the whole of lot 150 of the Onondaga reservation, containing 250 acres; and were it not for other facts disclosed in the case, a right to sell any part of this lot, would be perfect upon a default in the payment of any sum due upon the mortgage. It however appears that on the 17th day of November, 1813, one Bildad Barber having purchased 62½ acres of the lot in question embracing a parcel about 49½ rods wide and extending across the easterly end of the said lot, procured a new account to be opened on the comptroller's books for the said 62½ acres, pursuant to the provisions of the statute upon that subject. (1 *R. L.* 476, § 4; 2 *R. S.* 159, 160, 2*d ed.*—175, 6, 1*st ed.*) On the 1st day of May, 1821, John and Thaddeus Bacon purchased of said Barber 26 acres particularly described in their deed of conveyance, parcel of this 62½ acres, and afterward procured a new account to be opened with them for the said 26 acres; and the complainant has become the owner of the said 26 acres of land, through several mesne conveyances, with all the rights originally possessed by the said John and Thaddeus Bacon. By the public law of the state the mortgage virtually ceased to be a lien on any of the parcels of land as to which new accounts had been opened, except for

such portions of the moneys due upon the mortgage as were in the opening of such account charged upon such parts respectively, and for the default of the owners of one part, the law gave no power to sell the part of another. It does not appear that any default had been suffered by any of the successive owners of the 26 acres, but the owner of the "remainder" of the 62½ acres for which a new account was opened, did make a default in payment, and such "remainder" was sold by the attorney general at a public sale pursuant to the statute, (*part 1, ch. 9, tit. 6 of the R. S.*) on the 8th day of June, 1837, and was struck off to the defendant Clift. The land advertised in the notice of sale is described as the " part of said lot known by the name of the 'remainder' of the part for which a new account was opened in the comptroller's books, in the name of Bildad Barber;" and the deed of conveyance executed by the attorney general to Clift, described the premises in similar language, adding these words, "*being forty-nine and a half rods wide and extending across the easterly end of said lot number 150 and supposed to contain 62½ acres.*" This last part of the description is erroneous, being a description of the whole 62½ acres, for which a new account was opened with Bildad Barber, instead of the "remainder" of that parcel, after a new account had been opened for the 26 acres.

Upon this state of facts, the question arises whether this deed is a cloud upon the complainant's title, within the principle of the case of *Van Doren* v. *The Mayor of New-York.* Should the defendant Clift seek to recover in an action of ejectment, the 26 acres of land belonging to the complainant, he would have to prove, first, the mortgage executed by Lyman to the state ; secondly, the affidavits of the publication of the notice of sale with such notice annexed, of the posting of such notice, and of the sale itself; (*see §§ 19, 20, 21 of the act before cited; 1 R. S. 214, 215 ;*) and thirdly, the attorney general's deed. Now these affidavits would, of necessity, show that a new account had been opened with Bildad Barber, upon the books of the comptroller, and also another new account with the grantees of Barber for a part of his portion of the lot ; and that it was

only the "remainder" of the portion that was advertised for sale, and that had been in fact sold. It would follow as a necessary consequence, that the attorney general had no power to convey any thing *but such "remainder."* In truth, the deed only professes to convey such *"remainder,"* but gives a mistaken description of the premises designated by that name, which would be rejected whenever the legitimate proof should be produced of the true boundaries of that parcel of the lot. We are inclined *to the opinion that, inasmuch as it would appear on the face of the papers which the plaintiff* in such ejectment suit would himself be bound to produce on the trial, that the attorney general had no power to convey any thing but the "remainder," such plaintiff would be bound to show by evidence aliunde the deed, that the "remainder" embraced the defendant's 26 acres. The attorney general sells under a naked power which embraces the "remainder" and nothing else; and we do not think that the doctrine of presumptions in favor of the official acts of public officers, would extend to a description of such remainder in the deed, as against a stranger in possession of a part of the land thus described. This evidence aliunde the deed he could not produce, especially against one in possession and deriving title under Barber himself. *But suppose the deed* should be held to furnish prima facie evidence that the remainder embraced the whole $62\frac{1}{2}$ acres, and the burden should fall on the defendant (Cox) to rebut this prima facie case. The deed from Barber, with the successive mesne conveyances, would probably do this. But at all events, the books of the comptroller, if they are kept in the manner contemplated by the statute, would furnish record evidence of what premises were embraced in the part called the "remainder." They would show a description of the parcel ($62\frac{1}{2}$ acres) for which a new account was opened with Barber, and also the parcel (26 acres) for which a new account was opened with the Bacons. (*See art. 3, tit. 3, ch. 8, part 1 of the R. S. ; and see also 2 R. S. 187, § 17.*)

It is not a case where the testimony which is essential to the complainant's defence, is liable to be lost by the death of wit-

nesses. That testimony consists of record evidence, which is no more liable to loss or destruction than the public records, which form the muniments of title of all the real property in the state. Suppose A., the owner of a farm, conveys it to B., and B. puts the conveyance on record, and after such conveyance is recorded, A. conveys the same premises to C., who brings eject- ment against B. Now C. might make a prima facie case against B., by proving A.'s title and the conveyance to himself, liable, however, to be defeated by the production of the record of B.'s deed. Now it is apparent that B. has a perfect defence at law, and that the evidence to prove it is not liable to destruc- tion or loss; and upon the principle of the cases before cited, it is difficult to see how the jurisdiction of the court of chancery can be supported to set aside C.'s deed. It is not perceived why a defence at law is not as perfect and the evidence to support it as little liable to be lost, in the case under consideration, as in that we have just supposed. There is also less necessity for a resort to a court of equity since the passing of the act authori- zing proceedings "to compel the determination of claims to real estate." (2 R. S. 312.) By the provisions of this act a speedy determination may be had of any adverse claim to lands which have been three years in the possession of the occupant; and such determination is a final adjudication of the rights of the parties. (See sections 6 and 14 of the act above cited.) We are compelled, therefore, to reverse the decree of the vice chan- cellor, and direct a dismissal of the complainant's bill.

We think, however, that the decree should be reversed, and the bill be dismissed *without costs* to either party. The rule adopted by the chancellor in the case before cited, (9 *Paige*, 388,) is a far less liberal one than had formerly prevailed in this state. In the case of *Hamilton* v. *Cummings*, (1 *John. Ch. Rep.* 517,) Ch. Kent maintained, after a review of all the pre- vious cases, that the court of chancery had jurisdiction to direct a deed to be given up to be cancelled, which was void, whether its invalidity depended on a matter of law, or upon extrinsic facts, to be proved; or whether such invalidity appeared on its face, or was made out by evidence. It is also true in point of

fact, that a deed which purports to convey away the lands of another, notwithstanding such deed may be shown by record evidence to be void, *does* cast a cloud on his title, and *tends* to prevent a prudent and careful man from purchasing. It is, therefore, expedient and equitable, irrespective of the rule of law as more recently established, that such a deed should be cancelled or set aside. In this case, the defendant was bound, as a fair and honest man, to have released the complainant's 26 acres to which in equity he had not a particle of right; but instead of so doing, he asserted a claim to the whole 62½ acres, and actually executed a mortgage which contained the same erroneous description, which had, by mistake, been inserted in the deed. Under all these circumstances, we are of the opinion that he is not entitled to costs.

Decree of the vice chancellor reversed, and bill of complaint dismissed, without costs to either party as against the other.

