THE REMINGTON PAPER COMPANY, Respondent, *v.* ANNA M. O'DOUGHERTY et al., Appellants.

The purchaser of lands on sale under execution, after the expiration of a year from the day of sale without redemption, acquires an equitable title, which entitles him to maintain an action for the cancellation of instruments which, within the definition of courts of equity, are clouds on title.

An action is maintainable for the cancellation, as a cloud on title, of a forged deed which, upon the strength of a false certificate of acknowledgment, made by an officer duly authorized, has been put upon record.

As to whether the allegation of forgery simply would be a sufficient ground for invoking the jurisdiction of a court of equity, *quære*.

Where the law raises a presumption of the validity of a conveyance, and its invalidity can only be shown by extrinsic proof, an action to compel its surrender and cancellation as a cloud on title is maintainable.

An officer is not disqualified from taking an acknowledgment of a deed from his father to his wife by reason of his relationship to the parties.

Where a mortgage or a judgment, which has been paid, is continued as an apparent lien for inequitable purposes, as for defrauding creditors, an action is maintainable by a purchaser on execution sale of lands, so apparently incumbered, to compel its satisfaction of record.

Where upon the trial of an action to compel the cancellation of a deed alleged to have been forged, the issue of forgery was tried by all the parties upon the theory that it depended upon the question whether the signature to the deed was the genuine signature of the apparent grantor, and the referee found it was not executed by him and was not his deed, *held*, that it could not be claimed upon appeal that the grantor may have acknowledged the deed and so bound himself thereby ; that the finding, interpreted with reference to the issue made, was equivalent to a finding that the deed was neither executed nor acknowledged by the grantor ; and that the finding was conclusive here.

Upon an issue as to the genuineness of a signature to a deed witnesses called to prove that the signature was not genuine and who testified they had seen the alleged grantor write and knew his handwriting, on cross-examination stated that their opinion was partly based on the examination of other instruments which it had previously been proved were genuine, and by a comparison of the signatures thereto with the one in question ; but they also testified that they were able to express an opinion independent of the knowledge derived from such comparison. *Held*, that a refusal of the referee to reject the opinions of said witnesses, so far as based upon such comparison, was not error.[*]

[*] This case was tried before the passage of the act (chap. 36, Laws of 1880) allowing witnesses to make comparison of a disputed writing with other writings proved to be genuine.

The mere proof of the execution of a paper which is not received in evidence furnishes no ground for an exception.

Plaintiff brought an action against P. to recover damages for a breach of a contract to convey certain land, the complaint in which alleged that defendant had not delivered or tendered a conveyance as stipulated, but " was and still is unable so to do." The answer denied that defendant " was or is unable " to convey, and alleged that he was discharged from any obligation to perform by reason of certain specified acts and conduct of plaintiff. The referee found that the contract was broken by defendant, and that plaintiff was entitled to recover the sum paid on the contract with expenses and disbursements ; also, that the legal title to the lands was vested in A., the wife of P., by deed from J., the father of the latter ; that P. had a power of attorney from his wife authorizing him to sell ; but that there were liens and incumbrances thereon which prevented the giving a clear title as agreed. Plaintiff, on sale under execution issued upon the judgment in said action, bid off the lands and then brought this action against P. and A. to set aside the deed from J. to A. on the ground that it was forged, and that said lands on the death of J. intestate descended to P. *Held,* that plaintiff was not estopped by the judgment in the former action ; that it was not material in the former action whether or not P. had title ; that in answer to any claim founded on the deed in said former action it was sufficient for P. to show his authority to sell ; and that while he so avoided the force of the deed and thereby impliedly admitted its genuineness, the matter in avoidance having been found in his favor, he was not estopped by the admission and, therefore, it constituted no estoppel in his favor against plaintiff; also, that the judgment in the former action was not an estoppel, as A. was not a party thereto or bound by the judgment therein.

As a general rule a party alleging the estoppel of a former judgment must establish that the same fact sought to be litigated in the second suit was in issue in the former one.

Where a material fact is alleged which is met by new matter set up in avoidance, and so is impliedly admitted, and the matter in avoidance is sustained by the findings, the implied admission does not work an estoppel.

A portion of the lands was sold on execution on a judgment against defendant A. The purchasers, after the time for redemption had expired, assigned the certificate of sale to A., who received the sheriff's deed. Said judgment was prior to that recovered by plaintiffs against P., but his cause of action accrued and the action was commenced before the incurring of the obligation upon which the prior judgment was rendered. *Held,* that plaintiff was not precluded from alleging the invalidity of the title of A. ; that his rights were paramount to those acquired by her under the sale and sheriff's deed.

Plaintiff alleged that a mortgage upon a portion of the premises was paid by P., but for the purpose of defrauding his creditors was assigned to A.;

it was claimed by defendants that the money paid to the mortgagee was paid out of rents of the premises. It did not appear that the forged deed had been delivered to A. at that time, and it was not recorded until afterward. *Held,* that the rents belonged to, and so the payment was made by P. ; that assuming that as between P. and A. the latter could have claimed the rents after the delivery of the deed although it was a forgery, there was no presumption of delivery before the payment was made.

In respect to a forged instrument there is no presumption of delivery at its date or at any particular time.

It appeared that certain judgments which were liens upon the lands in question prior to that of the plaintiff were assigned to A., and upon executions thereon certain portions were sold and bid off by her. A. borrowed the money to pay the judgments on security of an assignment of a claim against the State for damages to the lands. The assignee collected an award for such damages, and out of the amount deducted the amount of the loan. *Held,* that the referee was justified in finding that as to P.'s creditors the judgments were paid by him, and that the sales thereunder vested no title in A.

The attorney of A., supposing she owned another judgment, without the knowledge or consent of the actual owner, and without being substituted as attorney for the plaintiff in the judgment, issued execution thereon in his own name, and the sale was made on this as well as the executions upon the other judgments. The owner of the judgment was made defendant and claimed that his rights should not be prejudiced by the unauthorized act of the attorney. *Held,* that the sale upon this judgment did not vest in A. a valid title ; that she was chargeable with full knowledge of all the facts; and that as the court had all the parties before it a decree setting aside the sale and allowing the judgment to stand as if no sale had been made was proper.

Other portions of the lands in question were sold upon execution against P. The purchaser, after the fifteen months had expired, assigned the certificate of sale to A., who received the sheriff's deed. The defendants' counsel requested the referee to hold that no relief could be granted in respect to these portions, which he refused. The referee found that A. acquired legal title, but that the consideration of the assignment was paid by P., and that the title of A. was subject to a trust in favor of the creditors of P., and directed the appointment of a receiver to whom A. should convey, to be sold, etc. *Held,* that the relief so granted was not within the case made by the complaint, as no relief was asked in respect to said judgment; and that upon the proceedings as they stood, as there was no amendment of the complaint, defendants' request should have been granted.

*R. P. Co.* v. *O'Dougherty* (16 Hun, 594), modified.

(Argued April 30, 1880 ; decided September 21, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, modifying and affirming as modified a judgment in favor of plaintiff entered upon the report of a referee. (Memorandum of decision below, 16 Hun, 494.)

This action was brought to have certain deeds and mortgages set aside and canceled of record.

The plaintiff alleged in its complaint and the referee found in substance that it recovered a judgment in the Supreme Court against the defendant, Patrick O'Dougherty, on the 24th day of April, 1873, for $2,822.40, upon which execution was issued and various parcels of real estate, numbered from 1 to 14 inclusive, were sold by the sheriff of Jefferson county on the 12th day of December, 1874, and bid off by the plaintiff, and the said execution was thereupon returned satisfied, and a certificate of sale issued to the plaintiff on the 22d of December, 1874. The judgment was recovered in an action for the breach of a contract, bearing date on the 28th day of April, 1866, whereby the said Patrick O'Dougherty agreed to sell to the plaintiff certain lots of land and water powers and privileges, situate in the county of Jefferson, being portions of the real estate in question. Plaintiff also was the owner by assignment of three other judgments on which executions have been issued to the sheriff of Jefferson county and returned unsatisfied. The complaint, in substance, charged a conspiracy by and between said Patrick O'Dougherty and Anna M., his wife, to hinder, delay and defraud the creditors of the said Patrick in various modes and by various contrivances, by which the said Patrick and Anna M., acting in concert, have endeavored to cause the title to the various parcels of real estate to be vested in said Anna M. in order to defraud the creditors of the said Patrick, who is alleged to be insolvent. John O'Dougherty, the father of the said Patrick, and of whom the said Patrick was the only child and sole heir-at-law, resided, until his death, with the said Patrick, at Watertown, and died intestate in April, 1862, and the said Patrick was duly appointed the administrator of the estate. Certain parcels of the land, water rights, etc.,

being parcels referred to in Nos. 11 and 12 of the complaint, were in the possession of and belonged to John O'Dougherty at the time of his death, but that at some time the said Patrick made, or caused to be made, what purports to be a conveyance of said parcels from the said John O'Dougherty to the defendant Anna M., bearing date on the 25th day of December, 1861, and which purports to have been then acknowledged by the said John before the said Patrick, as a justice of the peace, which office he then held, and which was recorded in the office of the clerk of Jefferson county, as a deed, on the 22d day of December, 1868, which pretended deed was a forgery and the certificate of acknowledgment. false.    This is claimed to be a cloud upon the right and title of the plaintiff to the said parcels 11 and 12; and the complaint further avers that the pretended conveyance and the false certificate of acknowledgment and the recording thereof were made, or caused to be made, by said Patrick and Anna, with a view to hinder, etc., the creditors of said Patrick.

The defendant Anna claimed another title to the parcels 11 and 12, predicated on a sale of those parcels by the sheriff to her on a judgment in favor of John M. Carpenter against her. The property was sold on the execution as the property of Anna, and the time to redeem having expired, she afterward procured the assignment of the certificate of sale, and a deed from the sheriff thereupon.    The complaint also alleged the recovery of sundry judgments against Patrick O'Dougherty, which have been paid by him; but were fraudulently left unsatisfied, and, by his procurement, assigned to said Anna M., and also sundry mortgages which have been paid by said Patrick, or by said Anna, in substance with the money of said Patrick, but which mortgages and judgments were fraudulently kept on foot and unsatisfied, in order that the same might be asserted and set up by the said Anna as unsatisfied as a part of the general scheme concocted by and between said Patrick and said Anna, to cause and procure the titles of the various parcels of property described to be conveyed to said Anna M., in fraud of the creditors of the said

Patrick, it being alleged that Anna, in some instances, caused sales to be made of particular parcels of said real estate on said paid judgments and mortgages, and thus by a pretended purchase at sheriff's sale procured an apparent record title to various parcels of said land — in truth, as against creditors, owned by Patrick. The referee found the said judgments and said mortgages to have been paid by said Patrick, or with the "*avails*" of his property, and found the facts in reference thereto substantially as alleged.

The further material facts are set forth in the opinion.

*D. O'Brien* for appellants. The judgment in the former suit was *res adjudicata* and conclusive in this case as to the title being in Mrs. O'Dougherty. (*Tuska* v. *O'Brien,* 68 N. Y. 446, 449; 20 id. 140; 69 id. 201, 430; 40 id. 59; 53 id. 394; 43 Barb. 469; 24 id. 100; 2 Wend. 399; Sedgwick on Damages [last ed.], 196–7; 14 N. Y. 329; 4 Comst. 71; 35 Barb. 303; 36 id. 89; 3 N. Y. 512; 1 Johns. Cas. 436; 5 Robt. 38; 34 Barb. 156; 36 id. 383; 50 id. 385; 41 N. Y. 113; 28 id. 347; 34 How. 440; 12 N. Y. 184; 32 id. 281; 48 Barb. 73; 3 Keyes, 390.) Mrs. O'Dougherty, although not a party to the record in the former suit, was not prevented from alleging in this case that the former finding is *res adjudicata.* (*Castle* v. *Noyes,* 14 N. Y. 325; *Chipman* v. *Montgomery,* 63 id. 234–5; *Havens* v. *Sackett,* 15 id. 365; *Birmingham* v. *Kirwan,* 2 Sch. & Lef. 444; 4 Barb. 332; 4 Edw. Ch. 711.) The burden of proving whether John O'Dougherty executed the deed of December 25, 1861, was on the plaintiff, and the referee properly held as the law of the case that it was bound to prove that it was a forgery beyond a reasonable doubt. (20 Am. Rep. 409; 41 N. Y. 397; 25 id. 252; 10 id. 509; 31 Barb. 155; 1 Denio, 323; 8 Wend. 403–4; 5 id. 532; 24 id. 86; 18 N. Y. 86; 4 id. 555; 42 Barb. 284; 6 N. Y. 422.) Patrick and every one claiming under him were, under the circumstances, estopped from questioning the title of the purchasers at the sheriff's sale, or their assignees. (27 Barb. 595; 2 T. & C. 427; 58 N. Y. 681; 64 Barb. 548.) Even if Patrick did pay the

money for the transfer of the certificates, that fact would not prevent title from vesting in his wife, under the sheriff's deed. (15 N. Y. 475; 46 Barb. 549; 31 id. 390; 46 N. Y. 12; 53 id. 622; 44 Barb. 251; 48 N. Y. 365.) Equity has no jurisdiction of this case, for the reason that plaintiff had a perfect remedy at law, by action of ejectment. (13 Hun, 38; 62 N. Y. 462; 63 id. 132, 489; 59 id. 280; 49 id. 373; 6 id. 147; 1 Wait's Actions and Defenses, 666.) Courts of equity have no jurisdiction to entertain such an action. The plaintiff must wait till his title is attacked. (62 N. Y. 462; 63 id. 462; 13 Hun, 38; 75 N. Y. 409; 74 id. 437; 73 id. 430.) When judgment is obtained by the holder against the maker and indorser of a note, the latter may pay it and take an assignment, and wield the same against the property of the maker. (3 Barb. 12; 2 Denio, 119; 14 Barb. 481; 10 N. Y. 66; 39 How. 391; 21 Barb. 543.) A paid-up mortgage, assigned to a third person by the mortgagor, is discharged or not, according to the intention of the parties at the time of the assignment. (*Champney* v. *Coope*, 32 N. Y. 543; *Read* v. *Livingston*, 3 Johns. Ch. 481; 36 N.Y. 412; 32 id. 629; 24 id. 623; 9 Hun, 514; *Eno* v. *Crook*, 10 N. Y. 60.)

*L. J. Dorwin* for respondent. From the death of John O'Dougherty until the deed to Anna was recorded, the title must be treated, so far as plaintiff is concerned, as vested in Patrick, as heir-at-law of John, and the recording of the deed has no greater effect than a deed then executed and delivered by Patrick to Anna, without consideration. (Story's Eq. Jur., §§ 389, 390, 391; *Bodine* v. *Killeen*, 53 N. Y. 93; *Wendell* v. *Rensselaer*, 1 Johns. Ch. 353; *Town* v. *Needham*, 3 Paige, 545, 555; *Tilton* v. *Nelson*, 27 Barb. 595, 601; *Storrs* v. *Barker*, 6 Johns. Ch. 166; 1 Hilliard on Real Prop. 170, §§ 18, 19, 20, 21, 23; 2 id. 428, § 123; 7 Hun, 514; *Birckhead* v. *Brown*, 5 Sandf. 134, 145; 2 Phillips' Evidence [C. & H.'s and E.'s notes], 14; 32 Barb. 296.) The assignments of the Sewall mortgage being unrecorded, and plaintiff having no notice, the assignees of either of them can have or enforce no

greater or other rights than the original mortgagees, and as to them, the mortgage is fully paid. (*Fort* v. *Burch*, 5 Den. 187; *Vanderkemp* v. *Shelton*, 11 Paige, 28; *Purdy* v. *Huntington*, 46 Barb. 389; *James* v. *Morey*, 2 Cow. 246; *Jackson* v. *Post*, 15 Wend. 588; *Bush* v. *Lathrop*, 22 N. Y. 535; *Trustees of Union College* v. *Wheeler*, 61 id. 88, 104–5, 113, 114, 115; *McNeil* v. *Tenth Nat. Bk.* 46 N. Y. 325; *Moore* v. *Metropolitan Bk.*, 55 id. 41.)

ANDREWS, J.   The title of the plaintiff, as purchaser of the real estate of Patrick O'Dougherty, under its judgment and execution, had not, at the time of the commencement of this action, been perfected by a conveyance from the sheriff. But more than a year had elapsed from the time of sale. The period for redemption by the judgment debtor had expired, and the only contingency which could defeat the right of the purchaser to a deed, at the expiration of fifteen months, was a redemption by other judgment creditors, or by a mortgagee whose mortgage was a lien on the premises. In that case, the redeeming creditor, or mortgagee, would acquire the rights of the plaintiff, and would be entitled to a deed from the sheriff, if no further redemption was made.. (2 Rev. Stat. 371, § 51.) The legal title of the judgment debtor to lands sold on execution is not divested until the sheriff's deed is executed. But after the expiration of a year from the sale, without redemption, the purchaser acquires an equitable title to the land, subject only to the right of possession in the judgment debtor, until the expiration of fifteen months from the sale, and to the right of redemption by other creditors. The judgment debtor's rights in the land are certain to be completely divested by the lapse of the fifteen months, and by the sheriff's deed, which after that time, the purchaser, or one who has acquired his rights, has the absolute right to demand and receive. (*Wright* v. *Douglass*, 2 N. Y. 373; *Chautauque Co. Bk.* v. *Risley*, 19 N. Y. 379.) This inchoate title of a purchaser of lands on execution after the expiration of the time for redemption by the judgment-debtor is, we think,

such an interest and title as entitles the purchaser to maintain an action for the cancellation of instruments or incumbrances, which within the doctrine of courts of equity are clouds upon title. In this case the plaintiff received the sheriff's deed soon after the commencement of the action, and his prior equitable title was merged in the legal title acquired on the execution of the conveyance.

The complaint also makes out a case for the interference of the court in respect of the character of the conveyances and incumbrances which it seeks to set aside. It is alleged that the deed of December 25, 1861, which purports to be a conveyance from John O'Dougherty, the father of Patrick, the judgment debtor, to Anna O'Dougherty, the wife of Patrick, of parcels 11 and 12, sold on the plaintiff's execution is a forgery; that the grantor named therein never executed or acknowledged the deed, and that the certificate of acknowledgment indorsed thereon is false. The complaint also charges that certain mortgages executed by Patrick, and certain judgments recovered against him, which are apparent liens on the premises prior to the judgment of the plaintiff, under which it purchased, have been paid by Patrick, but are kept on foot undischarged of record, and have been assigned to the defendant Anna for the purpose of defrauding Patrick's creditors.

It has been held that forgery is of itself a sufficient ground for invoking the jurisdiction of a court of equity to compel the surrender and cancellation of the forged instrument. (*Peake* v. *Highfield*, 1 Russ. Ch. 559, and cases cited; see, also, *Bushnell* v. *Harford*, 4 Johns. Ch. 301.) It is not necessary to consider whether under the recent authorities an action can be maintained to set aside a conveyance as a cloud upon title, on the allegation of forgery simply. The general rule as now understood is that when a party making title or claiming under an instrument or conveyance invalid for any reason would be compelled in establishing his right to prove the genuineness or validity of such instrument or conveyance in the first instance by direct proof, no case arises for the interposition of equity.

(*Town of Venice* v. *Woodruff*, 62 N. Y. 462, and cases cited.) But when the law raises a presumption without direct proof, of the validity of a conveyance, and its invalidity can only be made to appear by extrinsic evidence, a case is presented for the exercise of the jurisdiction of a court of equity, to compel the surrender and cancellation of the conveyance as a cloud upon title. (*Scott* v. *Onderdonk*, 14 N. Y. 9 ; *Marsh* v. *City of Brooklyn*, 59 id. 280, and cases cited.) The jurisdiction of the court to set aside the forged deed of December 25, 1861, as a cloud upon the plaintiff's title, is clear within the strictest rule on the subject. The statute makes a deed duly acknowledged or proved, and certified by any officer authorized to take the acknowledgment of deeds, evidence, without further proof of execution. (1 Rev. Stat. 759, § 16.) The production of the deed of December 25, 1861, with the certificate of acknowledgment indorsed thereon, would, under the statute, be sufficient to entitle it to be read in evidence without further proof of the signature of the grantor. The certificate was in due form. It is in the handwriting of Patrick O'Dougherty, who was, at the time it purports to have been made, a justice of the peace, duly authorized to take the acknowledgment of deeds, and he was not disqualified to take the acknowledgment by reason of his relationship to the parties. (*Lynch* v. *Livingston*, 6 N. Y. 422.) The fact of forgery was an extrinsic fact depending upon parol evidence, and the grantee in the deed, in making title thereunder, would not be bound to prove the genuineness of the signature of the grantor, but could repose on the statutory presumption arising from the certificate of acknowledgment, and this circumstance, independently of any other consideration, gives the court jurisdiction.

In respect to paid judgments and mortgages it is well settled that the court may grant relief by compelling their satisfaction of record when they are continued as apparent liens, for inequitable purposes. (1 Story's Eq., § 703 ; *Radcliff* v. *Rowley*, 2 Barb. Ch. 23 ; *Shaw* v. *Dwight*, 27 N. Y. 244.)

The question of the genuineness of the deed of December 25, 1861, was strongly contested on the trial. The issue of

forgery was distinctly made by the pleadings.   The grantor named in the deed died intestate in 1862, leaving his son Patrick his only heir-at-law.   The grantee was the second wife of Patrick by a marriage which took place in October, 1861, a few weeks prior to the date of the deed.   The deed purported to convey to Anna, in fee, a valuable real estate owned by John, comprising almost his entire property.   Patrick had several children by his first wife, living at the time of his alleged conveyance.   In April, 1866, Patrick entered into a written agreement for the sale of the lands embraced in this deed, and other lands then owned by him, to the plaintiff, for $20,000, the sale to be completed by a conveyance, and the payment of the purchase-price in May following.   The contract made no reference to any interest of Anna in any part of the lands, and it provided that Patrick should convey by warranty deed, free and clear from all incumbrances.   Subsequent to the making of the contract, a draft of a deed from Patrick and Anna, his wife, to the plaintiff, of the premises contracted to be sold, was prepared in the handwriting of Anna, which, after a particular description of each parcel, contained a general clause, reciting that they were the lands conveyed to John and Patrick O'Dougherty, "the said Patrick O'Dougherty being the said John's executor and heir-at-law."   The deed was left with the plaintiff for examination, and the plaintiff objected to the deed as not conforming, in respect of the water rights mentioned therein, with the contract, and afterward, in September, 1866, written notice was served by Patrick on the plaintiff, declaring the contract void for non-performance by the plaintiff.   In November, 1867, the plaintiff commenced an action against Patrick for breach of the contract of sale, in which issue was joined, and it resulted, April 23, 1873, in a judgment for the plaintiff for $2,822.40, being the same judgment upon which the plaintiff subsequently issued execution, and sold the premises, of which, by virtue of such sale, the plaintiff now claims title.   The alleged deed of December 25, 1861, from John to Anna O'Dougherty was recorded December 22, 1868, after the commencement of the action

against Patrick O'Dougherty on the contract of sale. The plaintiff, on the trial of this action, to sustain the issue of forgery of the deed of December 25, 1861, produced witnesses who testified that the signature to the deed was not the signature of John O'Dougherty, and also proved the general facts which have been stated, and gave evidence tending to show that from the time of his father's death, in 1862, until the controversy with the plaintiff arose, Patrick, with the knowledge of his wife, exercised acts of ownership over, and managed and controlled the property embraced in the deed as his own. The defendants, on their part, produced witnesses who testified that the signature to the deed was the genuine signature of John O'Dougherty, and gave evidence to explain the control exercised by Patrick consistently with the deed.

It will be perceived from this general statement that the evidence upon the issue of forgery, was conflicting. The referee found that the deed was not the deed of John O'Dougherty; that it was not executed by him, and that he died seized of the premises described therein. It is claimed that the finding may be true, and yet that the grantor may have acknowledged the deed, and thereby bound himself thereby. But the issue of forgery was tried on the part of all the parties, upon the theory that it depended upon the determination of the question whether the signature to the deed was the genuine signature of the grantor, and the finding interpreted with reference to the issue made, and the course of the trial is equivalent to a finding that the deed was a forgery, and was neither executed nor acknowledged by the grantor, and the finding is on this appeal conclusive. (*Stilwell* v. *Mutual Life Insurance Co.*, 72 N. Y. 385.)

One Bagley was called as a witness by the plaintiff on the question of the signature of John O'Dougherty to the deed, and testified to a knowledge of his handwriting, and that the signature was not his. On his examination by the defendants' counsel he testified that he had in his possession a deed, and also a bill in an equity suit signed by John O'Dougherty, the grantor in the deed in controversy. The

papers in the possession of Bagley had been exhibited to some of the witnesses called by the plaintiff on the question of handwriting prior to their examination. These witnesses testified that they were acquainted with the handwriting of John O'Dougherty, and had seen him write, and that in their opinion the signature to the deed of December 25, 1861, was not written by him. On their cross-examination they testified that their opinion was partly based on their examination of the instruments in Bagley's possession, and a comparison of the signatures in these papers with the signature to the deed in question. But they also testified that they were able to express an opinion independently of the knowledge derived from such comparison. The defendant's counsel, on submitting the case to the referee, requested him to hold and decide that the knowledge of these witnesses as to the handwriting of John O'Dougherty, derived from a comparison of the signature to the deed with other alleged genuine signatures of the grantor, and their opinions, so far as they were based upon such comparison, should be rejected. The referee refused to so hold and decide, and the defendant's counsel excepted.

We are of opinion that the exception was not well taken. The witnesses were competent to speak as to the genuineness of the signature to the deed from knowledge of the handwriting of the grantor, derived from having seen him write, and from having had business transactions with him, which made them acquainted with his handwriting. We may assume in disposing of the exception that the opinion they entertained, that the signature to the deed was not the genuine signature of John O'Dougherty, founded upon their previous knowledge of his handwriting, was strengthened by the inspection of the papers in Bagley's possession, and by the comparison made of the signature in these papers with the signature to the deed. But we are not aware of any rule which excludes the opinion of a witness as to handwriting, who is competent to speak upon the subject, because he has by the examination of genuine papers, written by the person whose signature is in question, refreshed his recollection, and is thereby enabled to speak

with greater positiveness on the subject than he otherwise could have done, nor do we think that the court can be called upon in such case to exclude from consideration the knowledge of the witness derived from such examination or comparison made between such genuine writings and the writing in controversy. The tendency of the later decisions has been in the direction of greater liberality in the admission of opinions of witnesses as to handwriting, and we think the rule excluding opinions formed on mere comparison of handwriting does not apply in the case now in question. The rule itself has, since the trial of this case, been abrogated in this State by legislative enactment (chap. 36, Laws of 1880).

During the trial the plaintiff produced and put in evidence a bond and mortgage executed by Patrick O'Dougherty to one Graham. Attached to the bond was a guaranty, purporting to be signed by John O'Dougherty. The plaintiff, under objection of the defendants, was permitted to prove that the signature was genuine. The plaintiff then offered the guaranty in evidence, and on the objection of the defendants it was excluded. The plaintiff subsequently was allowed to prove by another witness the signature to the guaranty. This is claimed to have been error. The guaranty was not a paper relevant to the cause, and if it had been permitted to be put in evidence its admission would have been error. But it does not appear that it was seen by or left with the referee, and the mere proof of the execution of a paper which is not received in evidence is a harmless proceeding, and furnishes no ground of exception. It cannot be assumed that the referee in deciding the case took into consideration an instrument which he refused to admit in evidence.

It is claimed that the judgment in the action brought by the plaintiff against Patrick O'Dougherty to recover damages for his refusal to perform the contract of April, 1866, which included lots 11 and 12, embraced in the deed of December 25, 1861, estops the plaintiff from claiming that the deed was a forgery, or that the grantee therein did not acquire thereunder the title to the lands purporting to be granted thereby. The

complaint in that action after setting out the contract, and the refusal of the defendant to perform it, averred among other things that the vendor had never delivered, or tendered a conveyance, as required by the contract, "and was, and still is unable to do so," and the plaintiff claimed to recover as damages the amount paid by the plaintiff on the purchase, and for taxes and repairs on the property ; the expenses incurred in the removal of machinery, and the injury thereto in consequence of the removal, and the difference between the contract price, and the actual value of the property at the time of the breach.     The defendant in his answer denied that he "was or is unable " to make a conveyance of the property as provided in the contract, and averred that he was discharged from any obligation to perform it by reason of the acts and conduct of the plaintiff particularly set out in the answer.     After issue joined the case was referred to a referee for trial.     There is no proof of the proceedings before the referee except as they appear in his report contained in the judgment roll.     The referee found that the contract had been broken by the defendant, and that the plaintiff was entitled to recover, and awarded as damages the sum paid by the plaintiff on the purchase, the amount expended for taxes and repairs, while the plaintiff was in possession under the contract, and the expense of searching the title.     He allowed nothing for the loss of the bargain, and it does not appear whether any evidence upon the subject was given.     The referee also found that the legal title to a portion of the property included in the contract was vested in Anna O'Dougherty under the deed of December 25, 1861, executed by John O'Dougherty before his death, to be delivered after his death, and that it was so delivered in 1862, but that the defendant held a power of attorney from his wife authorizing him to sell and convey her lands.     He further found that there were judgments and mortgages which were liens on portions of the lands contracted to be sold which disabled the vendor from conveying a title free from incumbrances as provided in the contract.

It is insisted that the fact having been found, in the action

brought by the plaintiff against Patrick O'Dougherty on the contract, that the deed of December 25, 1861, was executed by John O'Dougherty, the plaintiff, is estopped from claiming to the contrary. We do not assent to this position. It was not material to the cause of action in the suit against Patrick O'Dougherty whether he did or did not have title to the land which he contracted to convey. The fact that the title to a part of the land may have been in Anna O'Dougherty was only material upon the question of damages. (*Pumpelly* v. *Phelps,* 40 N. Y. 59; *Peters* v. *McKeon,* 4 Den. 546.) It does not appear from the pleadings in the action that the fact of the title of Anna under the deed of December 25, 1861, was in issue. The general allegation in the complaint of the inability of the defendant to convey a title according to the contract would be supported by proof of the existence of liens by judgment or mortgage on the premises, and it is found that in fact such liens existed. The report of the referee does, however, show that the fact of Anna's title was presented on the trial. But it was a complete answer to the claim to recover increased damages, on the ground of this outstanding title, that the vendor had authority from Anna to sell and convey her lands, and in answer to the claim founded upon the deed of December 25, 1861, it was sufficient for the defendant by way of avoidance, to prove the existence of the authority, and it is quite obvious that this was the actual course of the trial. Patrick, manifestly from his relation to the transaction, did not question the genuineness of the deed, but he avoided the force of it, as bearing upon the question of damages, by proving the authority. This was an implied admission of the genuineness of the deed, but such an admission, when the matter in avoidance is found in favor of the party alleging or proving it, does not conclude him from afterward disputing the fact admitted in another action, and as Patrick is not estopped by the judgment in the former action from contesting the validity of the deed, so also it constitutes no estoppel against the plaintiff. The general rule is that the party alleging the estoppel of a former verdict must establish that the same fact

sought to be litigated in the second suit was in issue in the former one.    Lord ELLENBOROUGH, in *Outram* v. *Morewood* (3 East, 346), speaking of a verdict in *Evelyn* v. *Haynes,* says: "It could not have been pleaded by way of estoppel, because no issue was taken in the first action upon any precise point, which is necessary to constitute an estoppel in the second action."    In *Boileau* v. *Rutlin* (2 Exch. 664), PARKE, B., says: "The facts actually decided by an issue in any suit cannot be again litigated between the same parties, and are evidence between them, and that conclusive, and so are the material facts alleged by one party which are directly admitted by the opposite party, or indirectly admitted by taking a traverse upon some other facts, *but only if the traverse is found against the party making it.*"    Where matter set up in avoidance of a material fact is found against the party alleging it, the inference is that the decision rested directly upon the fact impliedly admitted, but it is otherwise when the matter in avoidance is sustained by the finding.    (See, also, *Carter* v. *James,* 13 M. & W. 137.)

But the judgment in the action on the contract is not an estoppel in this action, for another reason, viz.: that the defendant Anna was not a party to the former action, or bound by the judgment therein.    The contract related to lands owned by Patrick, in his own right, as well as the lands embraced in the deed to Anna.    It was a contract in his own name, and purported to be his personal contract.    He did not defend the action in right of his wife, and so far as appears, she had no notice thereof, and neither appeared nor took any part in the litigation.    She was, therefore, not estopped (*Alexander* v. *Taylor,* 4 Den. 302), and as estoppels ought to be mutual, the judgment is not an estoppel in her favor.

It is claimed by the counsel for the defendants, that assuming that the deed of April 25, 1861, is a forgery, nevertheless the defendant Patrick had no title to lots 11 and 12 capable of being sold on execution upon the plaintiff's judgment, for the reason that those lots having been sold on execution on a prior judgment of Carpenter against the defendant Anna, as her

property, and the purchasers, after the time for redemption had expired, without any redemption having been made, having assigned the certificate of sale to Anna, who subsequently received the sheriff's deed, she occupies the position of the original purchasers, and as they, if they had taken a conveyance from the sheriff, could have held the land as against Patrick on the principle of estoppel, she also acquired a valid title upon the conveyance by the sheriff to her, which, by relation, took effect as of the date of the sale, which was prior to the recovery of the judgment under which the plaintiff claims. It may very well be that Patrick O'Dougherty, upon the assumption that he was the active agent in the forgery of the deed of December 25, 1861, and in placing it upon record, would be precluded from alleging the invalidity of Anna's title, as against her grantee in good faith for a valuable consideration, or a purchaser upon judgment and execution against her, but the plaintiff cannot be so concluded. The plaintiff's right of action on the contract was complete, and its action thereon was commenced before the note was given upon which the Carpenter judgment was recovered. The plaintiff's right when it obtained its judgment, as against the judgment debtor, to treat the land embraced in the forged deed as his property, and to sell it on its execution, was not affected by any estoppel which might exist between Patrick and the purchasers on the Carpenter execution. The plaintiff's rights were not subordinate to, but were paramount to the rights of such purchasers. The forgery is the very fraud of which the plaintiff complains, and the plaintiff has done nothing to prevent it asserting the fact of forgery, or from insisting that the legal title to the property descended upon the death of John O'Dougherty to Patrick, the judgment debtor.

Parcels 1 to 4, inclusive, sold by the plaintiff on its execution, were, in 1842, mortgaged by Patrick to the executors of Mary F. Sewell. The balance unpaid on the mortgage was paid by Patrick in July, 1863, and the executors, at his request, "to save his rights in a controversy with the Rome, Watertown and Ogdensburg Railroad Company, about a right

of way through the land covered by the mortgage," assigned the mortgage to one Daly, the father of Anna O'Dougherty, who, in June, 1868, in consideration, as the assignment recites, of love and affection for his daughter, assigned it to her. Anna subsequently assigned this mortgage, and a Graham mortgage on parcel 7 to James F. Starbuck as security, and accompanying the assignment of the Sewell mortgage was a covenant by Anna and by Patrick, the mortgagor, that the whole amount secured by the mortgage was due and unpaid. The referee sustained these mortgages as valid liens, to the extent of Starbuck's claim, and all parties have acquiesced in this part of the decision, but the referee held and decided that the mortgage could not be enforced for any sum beyond the amount due to Starbuck. It is claimed by the defendant Anna that the Sewell mortgage was assigned to her at the request of Patrick, as a provision for her by her husband, and is, there. fore, a valid security in her hands for the whole amount; but there is no basis in the pleadings or evidence for this claim. The complaint charged that the mortgage had been paid, and after such payment was assigned to Anna, and was left undischarged of record to hinder, delay and defraud Patrick's creditors. The defendants, Anna and Patrick O'Dougherty, in their answer took issue upon the allegation of payment. It was not claimed in the answer that the mortgage was assigned as a provision or upon any new consideration passing between Anna and Patrick, and the evidence does not sustain any such claim. The case is, therefore, simply that of a mortgage paid by the mortgagor, and after payment, assigned, at his request, to a third person, without consideration, for a special purpose, which, so far as appears, has been answered, and afterward assigned by the nominal assignee to the wife of the mortgagor, who sets it up as a valid lien as against her husband's creditors. The payment of a debt by a debtor *prima facie* extinguishes the debt. It is doubtless true that a mortgage, although paid by the mortgagor, may, under some circumstances, be held to be undischarged, if such was the intention of the parties, but this depends upon equities, requiring that the mortgage should

still be regarded as outstanding, and no such equities exist in respect of this mortgage, to prevent the ordinary consequence attaching to the act of payment.

The Graham mortgage was assigned by the mortgagee to the defendant Anna, in August, 1867. It is claimed that the money paid to Graham on the assignment of the mortgage was paid out of the rents of the paper-mill property included in the deed of December 25, 1861. But these rents belonged to Patrick if that deed was a forgery. Assuming that as between Patrick and Anna the latter could have claimed the rents after the delivery of the deed, notwithstanding the forgery, it does not appear that the deed had been delivered to her at the time the money was paid to Graham. It was not recorded until 1868, and no presumption of delivery at its date, or at any particular time, can be indulged in respect of a forged instrument.

Another question arises in respect to certain judgments against Patrick O'Dougherty, recovered prior to the judgment recovered by the plaintiff. The complaint charges that these judgments were paid by the judgment debtor, and were procured to be assigned to Anna O'Dougherty to defraud Patrick's creditors, and that the defendant Anna had caused executions to be issued thereon, on which the real estate of Patrick was advertised to be sold, and the plaintiff, in its prayer for relief, asked that the sale be enjoined, and that the judgments be satisfied of record. The referee found in respect to all these judgments (except that of the Bank of Watertown), that they were paid out of the avail of Patrick's property, and judgment was entered directing that the judgments and the sale thereon (which had taken place intermediate the commencement and termination of the action), should be canceled and set aside. The defendants insist that the judgments were not paid by Patrick, or out of his property. The case shows that one Davis loaned to Anna O'Dougherty a certain sum of money on the security of her note, and of an assignment of a claim against the State for damages sustained in 1869 to the property embraced in the deed of December 25, 1861, out of which sum so borrowed Anna paid to the owners of the

judgments the several amounts thereof and took an assignment of the judgments to herself.   Davis collected from the State an award made to Anna, in respect of lots 11 and 12, and one made to Patrick in respect of other lands, and deducted therefrom the amount of the loan to Anna.   The evidence justifies the inference that assignments of these judgments were procured by Anna, in pursuance of a fraudulent scheme between her and her husband, to use them for the purpose of vesting in Anna, through a sale thereon, the title to the lands of her husband, and thereby defeat the claims of other creditors.   Anna was the nominal borrower from Davis, but the substantial security upon which the loan was made was the assignment of the claims for damages.   Patrick was the real owner of these claims in whosever name they may have been presented.   We think the referee was justified in holding that as to Patrick's creditors, the judgments were paid by him, and that the sale thereunder vested no title in the defendant Anna.

The judgment and execution in favor of the Bank of Watertown, at the time of the issuing of the execution, and of the advertisement and sale, was owned by Mr. Starbuck.   Without his knowledge or consent, or that of the bank, and without having been substituted as attorney for the plaintiff in the judgment, the attorney for Anna O'Dougherty (supposing that she owned the judgment) issued in his own name as attorney the execution on this judgment, upon which (and the other executions mentioned) the lands of Patrick O'Dougherty were sold.   It is insisted that the sale upon the bank judgment and the conveyance pursuant thereto vested in Anna a valid title to the lands sold, notwithstanding the fact that the attorney acted without authority.   But the rights of *bona fide* purchasers are not in question.   The defendant Anna is chargeable with full knowledge of the facts and circumstances under which the execution was issued. The true owner of the judgment is made a defendant in this action, and claims that his rights are not to be prejudiced by the unauthorized acts of the attorney who issued the execution. The court had all the parties in interest before it, and the de-

cree setting aside the sale on this execution, and declaring that the judgment should stand as if no sale had been made was clearly authorized.

In May, 1865, Lord and others recovered a judgment against Patrick O'Dougherty, upon which in July, 1872, parcels 8 and 9, mentioned in the complaint, with other lands, were sold to one McCormick, who, after the fifteen months had expired, assigned the certificate of sale to the defendant Anna, who took the sheriff's deed. The defendant Anna put in evidence the Lord judgment and execution, the certificate of sale thereunder, the assignment, and the sheriff's deed, to show title in her to parcels 8 and 9, sold under the subsequent judgment of the plaintiff. The referee found that the defendant Anna acquired by the proceedings a legal title to parcels 8 and 9, and that the plaintiff acquired no title thereto by the sale on its execution. But the referee also found that the consideration for the assignment of the certificate was paid by the defendant Patrick, and that the title of the defendant Anna is subject to a trust in favor of Patrick's creditors, and directed that a receiver be appointed, and that the defendant Anna convey to such receiver parcels 8 and 9 to be sold, and that the proceeds be applied in payment of the unsatisfied judgments held by the plaintiff. We think that this relief was not within the case made by the complaint. The complaint contains no reference to the Lord judgment or the title thereunder, and asks no relief in respect thereto. The referee was requested by the defendants' counsel to hold that no relief could be granted in respect to parcels 8 and 9, on the ground that such relief was not within the issues made by the pleadings. The referee refused so to hold. There was no amendment of the complaint, and upon the pleadings as they stood, the request should have been granted.

We have examined all the questions in the case, and are of opinion that the judgment below should be modified by striking out the provisions relating to parcels 8 and 9, and as so modified, should be affirmed, without costs in this court to either party.

All concur; FINCH, J., not on bench at argument.

Judgment accordingly.