By the Court.—Sedgwick, Ch. J.
On the trial, the counsel for defendants claimed that the defense of the illegality of the agreement complained upon was res adjudieata between the parties, in an action formerly determined by the supreme court. The record in the action was produced. The plaintiff was The People of the State of New York, against The Philadelphia & New York Steam Navigation Company, William P. Clyde, Benjamin Betts, John A. Leslie and Amos Rogers.
The complaint alleged that, on June 10, 1874, the individual defendants and others executed articles of association to form a company under the act for the incorporation of companies formed to navigate the ocean, &e., passed April 12, 1852, and other amendatory acts ; that the certificate of incorporation was duly filed ; that it provided that the points between which the company was to navigate its vessels were Philadelphia and New York, and also that William P. Clyde, Jacob Lorillard, Benjamin Betts, Amos Rogers and John A. Leslie should constitute the board of directors for the first year; that, at a meeting for the organization of the board of directors, the last named persons acted as di *413 rectors, and that the officers of the company were then chosen ; that, at this meeting, William P. Clyde & Co., agents of the company, were made the agents and managers of the company’s business, to be paid specified commissions; that, at the time of the execution of the articles, five of the “said incorporators” were, and afterwards continued to be, clerks of William P. Clyde & Co.; that each of the said clerks was noted on the subscription book of said company as having subscribed for one share of its stock, of the par value of $100, “but that soon afterwards ” the said William P. Clyde required the five clerks to indorse upon the certificates, respectively, “ an irrevocable assignment and transfer” of the stock in blank as to the assignee, and at the same time took possession of such indorsed certificates, and had for several years retained control of the certificates; that, “by such indorsement and delivery, as aforesaid, they parted with their legal and equitable title to the said shares of stock, by which said Benjamin Betts, &c., the clerks, no longer continued to be either the legal or equitable owners of said five named shares of the par value, &c., within the meaning of the statute, &c.”; “that, up to this date, such shares are the only ones standing in the name of such clerks on the book of said company”; that the effect of such transfer was to “ knowingly reduce ” the number of “actual bona fide” shareholders below the number required by law to constitute such a company; that “ such a condition of affairs has privately continued for several years, and that there have not been a sufficient number of lawful stockholders or directors, since such transfers and assignments as before mentioned, to constitute a board of five directors,” as required by law ; that the “ effect, purpose and intent of the said transfers and assignment” by the persons specified, “ and their subordinate positions in the hire and employ of William P. Clyde & Co., was to enable Wil *414 liara P. Clyde, president of the company, and his father, who was a stockholder, to obtain complete control of the company, to the advantage” of said Clyde, and in fraud of the rights in said company of any other dona fide and lawful stockholders; that persons named, being the clerks already specified, had unlawfully combined to manage the affairs of the corporation in the interest of William P. Clyde & Co., “and in fraud of the rights of Jacob Lorillard, the principal stockholder, and in violation of the statute”; that, contrary to the statute, there had never been an annual or any election held by the stockholders, or stockholders’ meeting called; that, in fraud of the rights of Jacob Lorillard, vice-president, director and principal stockholder, a directors’ meeting was held, and it was then and there resolved that two-steamers be taken from the line between Philadelphia and New York and run between Philadelphia and Boston, or any other ports that might be for the interest of the company ; that this'resolution was contrary to the articles of the association and of the express objects of its formation; that said William P. Clyde, as president, had, in other respects specified, used the property of the company in a manner that was in violation of the articles of association ; that, in violation of the statute, no certificate by the said William P. Clyde, as-president, and a majority of the directors, stating the amount of the capital stock, and that the same had been paid in, was ever filed; that the company had been for more than a year insolvent.
The complaint further alleged, by way of recapitulation, “and as they have hereinbefore in substance alleged and complained,” that “the private assignment and transfer by the said Betts, &c., of their single-shares of stock in said corporation, left said corporation without the number of stockholders requisite under the statute incorporating it to carry on its business,. *415 and that they are not now lawfully directors in said ” company.
The complaint asked judgment that the charter of the company be vacated, its corporate existence annulled and the corporation be dissolved, and that a receiver be appointed, &c.
The complaint was verified by Jacob Lorillard, now the plaintiff here.
The defendants, the company, William P. Clyde and John A. Leslie answered. The answer denied many of the allegations of the complaint; it admitted that the indorsement upon the certificates charged in the complaint had been made as charged, but denied “that the intention was that any of such parties should part with their legal title to such shares until a transfer on the books was so made, or that any of the parties ceased to be shareholders in said company until and by such transfer on the books of the company, or that they ceased to be the legal owners of said stock until such transfer.” The answer alleged that Jacob Lorillard and William P. Clyde & Co. entered into the agreement, which is now the subject of this action; that said company was formed pursuant to said agreement, and mainly under the advice of said Lorillard ; that all the names of the stockholders and directors-were selected by agreement between said Lorillard and said William P. Clyde & Co.; that it was contemplated by the agreement that the vessels of the company should be employed on other routes than between Philadelphia and New York; that it was supposed that the words of the articles would allow such employment, and if there had been any violation of the statute in this regard, it was unintentional and inadvertent ; that the action had been brought on the “relation or information” of the said Jacob Lorillard, who has an “interest in the questions involved in this action”; that Lorillard had retained counsel to prosecute the- *416 action, and had indemnified the People as plaintiff against the costs and expenses of the action. The answer continued: “ These defendants aver that there is a defect of parties in this action, in this, that the said Jacob Lorillard has not been joined with the People as. a party plaintiff. They further allege that he is a necessary party to this action, either as plaintiff or defendant.” The answer was verified June, 1879.
On January lo, 1880, issues were framed for a trial before a jury. Among these issues were the following: First. Was the corporation defendant created, organized and conducted in good faith for the legitimate purposes contemplated by the acts of the legislature, specified in section 2 of the complaint ? Second. Was said corporation defendant created, organized and conducted with the real design and for the sole purpose of enabling Jacob Lorillard and William P. Clyde & Co., through the forms of law, and in the guise of a corporation, to carry on and conduct a private enterprise, which was, in truth and in fact, a partnership or joint adventure between said Lorillard, on the one part, and the said William P. Clyde & Co. (of the other part), and thus of using the said acts of the legislature to evade the personal liability attaching to partnerships or joint adventures? Third. Were there seven tona fide corporators, and five tona fide directors of said corporation defendant, as required by law? Fourth. Were the directors of said corporation defendant, other than William P. Clyde and Jacob Lorillard, tona fide stockholders therein, as required by law ? Fifth. Was the share of stock of said corporation which was issued to each of the . . . five corporators and three directors (other than William P. Clyde and Jacob Lorillard) so issued, and was the power of attorney, in blank, authorizing a transfer, etc., signed by said persons . . and by them delivered to William P. Clyde with the real design and for the purpose in fact, of giving said persons the ap *417 pearance of owning a share of said stock, when in truth, each of said shares was well understood by them to be, and in reality was, the property of Willian P. Clyde, or William P. Clyde & Co., and thus of apparently complying with, but actually evading the provisions of said act of the legislature specified in the second section of the complaint, etc.; and was it also in execution of the purpose specified in the “second” question? Seventh. Was the appointment of William P. Clyde ■& Co., as the agents of said corporation, etc., so made in execution and fulfillment of the contract. . . referred to in the pleadings, etc., and was the corporation, pursuant to said contract, etc., thereafter exclusively managed by said William P. Clyde & Co., and was such appointment and exclusive management . . . part and parcel of the methods adopted to enable said Lorillard and William P. Clyde & Co. to effect the purpose specified in the second question, and in execution thereof ?
There were many other issues framed, but such as have been stated, will present the question that is to be answered.
On February 24, 1880,. an order was'allowed “that Jacob Lorillard be made a party plaintiff in this action, with the People, the defendants, except Amos Rogers, hereby stipulating in open court, that upon said Lorillard being made a party, to consent to a summary amendment of all the proceedings herein, by inserting the name of said Lorillard, as a party plaintiff, and every issue and proceeding to remain unaltered, except in said amendment, and without prejudice to the proceedings already had.”
The present plaintiff, Lorillard, was not a party to this order. The record does not show that any amendments to the pleadings were made, to show how or why he was party plaintiff, or what was his interest in the litigation; nor was any judgment against him *418 asked. He did not take part in any proceeding until June 2, 1880. In the judgment-roll appears a certificate of the judge, before whom the framed issues were tried by the jury. Before the certificate begins is a statement as follows: “Entered that Jacob Lorillard appeared and was made a party plaintiff, under the order of the court, and moves with the People, the litigation on.” Then by the certificate it appears that to the first issue as framed, the jury answered, Ho; to the second, Yes; to the third and fourth, Ho; to the fifth, Yes, and to the seventh, Yes. Upon the verdict, etc., judgment was entered, which recited: “It having been established in this action: First, that the defendant corporation, The Philadelphia & Hew York Steam navigation Company, has offended against the provisions of the act creating it. Second, that it has violated the provisions of law, to wit: the third and seventh sections of chapter 328 of the act entitled “An Act for the incorporation of companies formed to navigate the ocean by steamships,” passed 12th April, 1852, by which said defendant corporation has forfeited its charter by abuse of its powers. Third, that it has exercised a franchise or privilege not conferred by law, “and. after hearing counsel for the defendants, and counsel for the People, and on motion of the attorney-general,” it is ordered, adjudged and decreed that the defendant corporation . . be and hereby is dissolved.”
In considering whether this judgment was conclusive as to any issue in the present case, it is first to. be noticed that the effect of making the present plaintiff a plaintiff in that action would extend no further, at the utmost, than to bind him by the determination to be made between the People and the defendant of the issues framed by the complaint and answer. A scrutiny of those issues will show that the People did not claim that the corporation was formed, in an unlawful manner, or anything in respect to an alleged cause of *419 forfeiture, which rested upon the illegality of the agreement, or the intent with which it was made, or upon anything being done in pursuance of the agreement. The complaint did not claim that the clerks of Clyde & Co. were not owners of the stock that had been issued to them, and which made them shareholders and qualified to become directors, but only claimed that sometime afterwards the certificates of stock were delivered to William P. Clyde & Co., with a power of Attorney, in blank, indorsed, and that from that time they ceased to be shareholders, or qualified to be or remain directors.
The complaint did not rest upon the illegality of ¿he agreement. It is not to be intended, that Loriljard, when made a plaintiff, meant to allege that the Agreement was unlawful, or that as the defendants claimed that there was no cause of forfeiture, they proffered an issue to maintain that the agreement, which they averred led to the formation of the corpo’ation, was illegal.
The conclusion seems to be irresistible that the questions framed for the jury went outside of the issues formed by the pleadings. The pleadings formed no issue as to whether the corporation was created in good faith, as asked in the first framed issue. Nor ‘did they, as to whether the corporation was created, organized or conducted with the sole purpose of enabling Lorillard and William P. Clyde and Co., through the forms of law and in „ the guise of a corporation, to carry on what was in fact a private enter-prize, in the nature of a partnership or joint adventure, as was asked in the second framed issue. The third and fourth, framed issues, asked whether there were seven tona fide corporators, and five tona fide directors as required by law, and whether the directors, who were the clerks of Clyde and Company, were tona fide stockholders. The time referred to is indefinite ; and *420 it must be presumed that it referred to the time when .the complaint, as part of its cause of action, stated they ceased to be shareholders, which, we have seen was after the formation of the company. So, also, the fifth framed issue asked whether the shares had been delivered or issued to the directors, who were clerks, with the real design and for the purpose in part of giving an appearance of ownership in the stock, when in truth the stock remained the property of Wm. P. Clyde & Co., and whether it was in execution of the purpose specified in the second question. The complaint, as has been already pointed out, made no claim that the directors referred to, were not the owners of the shares upon the certificates being issued to them, nor that the transfer was in execution of the purpose referred to. It must also be said, that the seventh question, as to whether the appointment of William P. Clyde, as agent of the corporation, was made in fulfillment of the agreement, referred to an allegation of the answer made for the purpose of showing that the charter was not to be forfeited, but did not refer to any issue made as to the illegality of the agreement. And' again, no issue was made by the pleadings as to whether or not the agreement was made with the intent of consummating or executing it, in violation of the statute.
To determine whether any issue in • this case was determined by the former proceeding, the substance and not the form of the proceeding must be considered (Palmer v. Hussey, 87 N. Y. 303). It must have been, that in the case by the People, on the issues actually framed, there ivas no purpose of determining as to whether the agreement .was void on its face or by its actual intent. It would be another question, as to whether the agreement was not a° piece of evidence, relative to the intent with which the things complained of were done. But in that case, the agreement and *421 its quality, would only be looked at as circumstantial evidence. There is no rule, that inferences from testimony in a former proceeding, constitute an estoppel in a subsequent case, when the same testimony is given. In substance, then, the matters referred to in the framed issues that have been examined, were at the best, pieces of evidence,, as to the issue actually framed.
It further appears, from the issue framed by the pleadings, that it was an immaterial matter, whether the agreement was valid and with valid intent, or the reverse. As we have seen, the parties made no issue but that, in its original formation, the corporation had a lawful origin. The matters that were complained of, as happening subsequent to the formation, were impeached for the existence of certain things, and the doing and intent of certaiif acts, at this subsequent time. Evidently, although the agreement and intent of the agreement, might be received in evidence, for certain purposes, an adjudication as to them, was not called for by a necessity to adjudicate upon the real issue, but would be immaterial whether found one way or the other. “A judgment is conclusive upon the parties thereto, only in respect to the grounds covered by it, and although a decree in express terms, purports to affirm a particular fact or rule of law, yet, if such fact or rule of law, was immaterial to the issue, and the controversy did not turn upon it, the decree will not conclude the parties in reference thereto ” (Woodgate v. Fleet, 44 N. Y. 14 ; citing People v. Johnson, 38 N. Y. 63 ; Remington Paper Co. v. O’Dougherty, 81 N. Y. 474).
Again, it appears that in the former proceeding, that the plaintiff in this action, could not have had an adjudication, as to the agreement or its validity or intent, which could have been the foundation of any judgment in his favor, as to his rights under the *422 agreement. He could not have claimed as to it, that he should have judgment for an amount due upon it. An adjudication, that the agreement was valid, would not have been any bar to the defense in the former proceeding. It would, if it possessed any influence, have tended to show, that the People and its co-plaintiff, who is plaintiff here, had no cause of action. As the former proceeding could not have given the plaintiff a favorable adjudication, either in his own favor, upon its terms, or have been used defensively, as to any claim made adversely to him, it would not bind him in this action (Dawley v. Brown, 79 N. Y. 390; citing Stowell v. Chamberlain, 60 N. Y. 272; Perry v. Dickerson, 85 N. Y. 345).
The verdict of the jury did not itself constitute an estoppel. It is the adjudication upon the verdict, which concludes the party,—e. g., notwithstanding the facts found by a jury, a party in whose favor the verdict is, may not be entitled to judgment. The adjudication in this case, or the judgment, did not make any determination as to or upon the matters, we have noticed as outside of the issues in the former proceeding. Webb v. Buckelew, 82 N. Y. 555. The judgment that the corporation be dissolved, was placed upon a recital that certain things had been established in the action. The first was, that the corporation had offended against the provisions of the act creating it. This refers, necessarily, to a corporate act, after the formation of this company. The second, that it ■ has violated the provisions of law, to wit, the 3d and 7th sections of the act, as to the number of shareholders and directors, and the qualification of the latter, “by which said corporation has forfeited its charter, by abuse of its power,” examined in the light of the complaint, excludes that it was established, that the first organizing of the company was invalid. The same is true of the third, which recited that it had been es *423 tablished, that the corporation had exercised a franchise not conferred by law.
In brief, there had been no former binding adjudication, that the agreement was invalid on its face, or in the intent with which it was made, or that the organization of the company was not, at the time, lawful and in pursuance of the statute.
The plaintiff, on this trial, gave sufficient proof that the company was duly organized. In Lorillard v. Clyde, 86 N. Y. 384, it had been held that the agreement was not invalid on its face. On this trial, the only evidence to establish that there was an actual unlawful intent, or that the subsequent action upon it, in respect to the formation and conduct of the corporation, showed that there was such an actual unlawful intent, was the proceeding in the supreme court, that has been examined and passed upon.
One particular objection to the agreement may be noticed now. It is, that one of its clauses provides for vesting the exclusive management of the corporation in William P. Clyde & Co., and if it were valid, would bind the directors of the corporation to be formed, to keep this management of the corporation in the hands of William P. Clyde & Co., no matter how prejudicial to the interests of the company such management might be. The court of appeals held that the agreement to do so was not invalid, because it contemplated, by proper construction, only a proper management, beneficial to the company. Even if the former proceedings be considered on this point, although the findings, but not the judgment, declare that the appointment of William P. Clyde & Co., as managers, was in pursuance and in execution of the agreement, there is no finding that this execution of the agreement was prejudicial to the company. The pleadings did not allege any improper motive in the appointment, but improper action as managers. The defendants in the present *424 action did not set up as a defense, that William S. Clyde & Co. were ousted from the management, in consequence of the action of the plaintiff ; nor was there any recovery of an amount equal to dividends at seven per cent, for any time after they came to be managers by the dissolution of the corporation.
The agreement being valid, the corporation at its organization having been formed in a lawful manner, and it having carried on business, for the time covered by a recovery in this case, the plaintiff was entitled to the verdict that was directed It was sufficient, for the purposes of this action, that in the time referred, the corporation existed de facto, although there existed cause for its subsequent dissolution.
Judgment affirmed, with costs.
Freedman, J., concurred.