The National Bank of West Troy, Appellant, *v.* Margaret Levy, as Executrix, etc., et al., Respondents.

While a mortgagee as such has no title to the land described in the mortgage, he is deemed a purchaser *sub modo,* and his mortgage, in a like qualified sense, is a conveyance.

When the equity of redemption is foreclosed, the purchaser takes the estate the mortgagor had at the time he gave the mortgage; until foreclosure the title is held subject to the mortgage and, to the extent of its amount, the mortgagor's estate in the land is practically diminished.

In an action brought by plaintiff as a judgment creditor to have canceled and discharged of record an alleged forged mortgage purporting to have been made by R. to L., the executrix of L. and administratrix of R. were made defendants, plaintiff having before commencing the action, requested the latter to bring an action for relief against said mortgage and she having refused. The defendants answered, putting in issue the allegations of the complaint as to the invalidity of the mortgage. The referee before whom the case was tried found that the alleged mortgage was never in fact executed or delivered by R.; that he died seized of the real estate described therein and left no other assets; he held that said mortgage was void, and that plaintiff was entitled to the relief sought. *Held,* no error; that although the mortgage was in fact a forgery, the presumption of validity arising from the record thereof, presented a case for the exercise of equitable jurisdiction to procure its cancellation as a cloud upon the title; that the case presented was properly one within

the statute (Chap. 314, Laws of 1858) for the maintenance of an action by the personal representative of R. and plaintiff as a creditor, on the refusal of said administrator to bring the action, was at liberty to do so. Also *held,* that the docketing of plaintiff's judgment in the county where the premises in question are situated, and the issuing of an execution thereon and return thereof unsatisfied were not essential to the maintenance of the action.

(Argued June 19, 1891; decided October 6, 1891.)

Appeal from order of the General Term of the Supreme Court in the third judicial department, made July 2, 1888, which reversed a judgment in favor of plaintiff entered upon the report of a referee and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*R. A. Parmenter* for appellant. The action is properly brought by the plaintiff. (*Harvey* v. *McDonald,* 113 N. Y. 528 ; *Bank* v. *Wetmore,* 35 N. Y. S. R. 316 ; *Barton* v. *Hosner,* 24 Hun, 467 ; *Potts* v. *Hart,* 99 N. Y. 168 ; *Southard* v. *Benner,* 72 id. 424 ; *Dewey* v. *Moyer,* Id. 70 ; *Bates* v. *Bradley,* 24 Hun, 84 ; *Sands* v. *Codwise,* 4 Johns. 536 ; *Weed* v. *Hornby,* 35 Hun, 581 ; 3 Pom. Eq. Juris. § 1095 ; *Randall* v. *Dyett,* 38 Hun, 347 ; *Crouse* v. *Frothingham,* 97 N. Y. 105–114 ; *Platt* v. *Platt,* 2 T. & C. 25 ; *Clute* v. *Emmerich,* 9 N. Y. 346.) The mortgage in question is a cloud upon the title of this real estate, such a cloud as any party legally interested may of right have removed. (*Ward* v. *Duvey,* 16 N. Y. 525 ; *Bushnell* v. *Hartford,* 4 Johns. Ch. 302 ; *R. P. Co.* v. *Dougherty,* 81 N. Y. 474 ; *Smith* v. *Fellows,* 9 J. & S. 36.) The whole scheme of the getting and fabricating of this instrument was gotten up by Ryan and his confederate Weaver to cheat and defraud the plaintiff. (*M. A. B. Church* v. *O. S. B. Church,* 73 N. Y. 95.)

*N. C. Moak* for respondents. Plaintiff had no cause of action against the defendants, or either of them. (*Cromwell* v. *Phipps,* 1 Conn. 65 ; *Myers* v. *Bronk,* 45 Hun, 401 ;

*Smith* v. *Cornell,* 111 N. Y. 559; 113 id. 320; *Harvey* v. *McConnell,* Id. 526.) Plaintiff had a perfect and cheap legal remedy to enforce a sale of the real estate of deceased for the payment of his debts. (*Moore* v. *Townsend,* 102 N. Y. 387, 392, 393; *Moore* v. *Brooklyn City,* 108 id. 98, 104.)

BRADLEY, J. This action was commenced December 13, 1877, and its purpose was to cancel as fraudulent and void and discharge of record a mortgage purporting to have been made by Michael Ryan to Bernard Levy of date May 11, 1872, upon certain lands in the county of Albany to secure the payment of $5,000, and recorded in the clerk's office of that county May 23, 1877. Ryan died in September, 1875, indebted to the plaintiff in a sum on account of which the latter on December 3, 1877, recovered a judgment against Catherine Ryan, as administratrix, etc., for upwards of $3,000. Before commencing this action the plaintiff requested such administratrix and she refused to bring an action for relief against the alleged mortgage. The defendants answered, putting in issue the material allegations of the complaint charging the invalidity of the mortgage. The original defendant, Levy, died before the trial, and the action was revived against Catherine Levy, as executrix, etc. The referee found that the alleged mortgage was never in fact executed or delivered by Michael Ryan to Levy, and that there was no property or assets of the estate of Ryan, deceased, other than the real estate described in that instrument, and of that he died seized.

And as conclusion of law the referee determined that the alleged mortgage was void, and that the plaintiff was entitled to judgment, that it be canceled and discharged of record, which was entered accordingly.

The plaintiff by its judgment had no lien upon the land to support the action, and its maintenance was dependent upon the right of Catherine Ryan as such administratrix to prosecute it. The question, therefore, is whether she had such right. When the common-law remedy of a creditor to charge the fraudulent vendee of his deceased debtor as an executor *de son*

*tort* for the purpose of relief was by statute taken away and the right of action in such cases given to the personal representatives of the decedent, it was through them and their right of action that the creditor at large must necessarily seek relief against the disposition in his life-time by the deceased debtor of his property in fraud of his creditors. (2 R. S. 449, § 17; *Babcock* v. *Booth*, 2 Hill, 181; *Bate* v. *Graham*, 11 N. Y. 237.) Those cases related to personal property, and such was the application made of the statute.

The provisions of chapter 314, L. 1858, are broader in their scope and meaning, and they are in effect that any executor or administrator may, for the benefit of creditors interested in the estate or property, disaffirm, treat as void and resist all acts done, transfers and agreements made in fraud of the rights of creditors; and that every person who shall in fraud of the rights of creditors have received, taken or in any manner interfered with the estate, property or effects of any deceased person, shall be liable in the proper action to the executors or administrators for the same or the value of any property or effects so received or taken. While the administrator does not take the real estate of his intestate, and as to that property he is not a trustee, it is to be appropriated for the payment of the debts of the decedent in default of personal estate for the purpose. At the time this action was commenced it was in the power of the administratrix, etc., of Ryan to take proceedings for the sale of the real estate for the payment of the debts of her intestate, with which it was then chargeable. (Code, § 2750.) In view of the statute of 1858 it was said by Judge Earl, in *Lichtenberg* v. *Herdtfelder* (103 N. Y. 302), that where land of the decedent has in his life-time been conveyed by him in fraud of his creditors, it is the duty of the executors to pursue and reclaim it for the benefit of such creditors, as the want of personal estate to pay them renders the realty assets for that purpose. And the same was held in *Barton* v. *Hosner* (24 Hun, 467). The purpose of the statute in its effect was beneficially so enlarged, as without it the remedy of the creditors would depend upon a

sale of the land, subject to the embarrassment which the apparent title in another might furnish, and as the consequence its marketable value in that condition would or might be greatly reduced and the proceeds realizable from the sale much less than otherwise would be produced by it. The same rule applies with equal reason to an apparent lien by mortgage upon the lands of the decedent created for like purpose. It is, however, urged that as the instrument in question was not executed by the intestate, it was not a mortgage upon the land described in it and, therefore, no action by the administratrix would lie to cancel it. It may be observed that the person named as mortgagee took it to the county clerk for record and caused it to be recorded in May, 1877, and by his answer he alleged that the intestate Ryan executed and delivered to him the mortgage, and the administratrix alleged upon information and belief that such mortgage was genuine and valid. The defendants were persistent in that defense on the trial, and that issue was there tried, and exception was taken to the conclusion of the referee that the mortgage was not executed by Ryan. It stood as an asserted lien upon the land with the claim of the alleged mortgagee and his personal representative that it was genuine and valid as such, aided so far as it could be by the adoption and approval of the personal representative of the alleged mortgagor. If, therefore, the instrument is a cloud upon the title to the land, the person named as mortgagee has, by means of it, "interfered with the estate" of the intestate in fraud of the rights of creditors, and it is entitled to the same treatment for the purposes of the remedy and relief as if it had, in fact, been made and taken with such fraudulent design by the parties to it. While a mortgagee as such has no title to the land he is deemed a purchaser *sub modo* and his mortgage in a like qualified sense is a conveyance. (*Ledyard* v. *Butler*, 9 Paige, 132; *Packer* v. *Rochester*, etc., *R. R. Co.*, 17 N. Y. 287.) And when the equity of redemption is foreclosed the purchaser takes the estate the mortgagor had at the time he gave the mortgage. (*Rector*, etc., v. *Mack*, 93 N. Y. 488.) Until then the title is held subject to the

mortgage and to the extent of its amount the estate of the mortgagor in the land is practically diminished. This is what Levy sought to accomplish upon the land in question, and if his efforts were effectual the estate attending the legal title would be reduced in value five thousand dollars and that much, by his interference with it, taken from the assets of the intestate. The purpose of this action is to reclaim the premises from that apparent charge placed upon them by such interference and to have such act judicially treated as void for the benefit of the creditors. And although the mortgage appears by the finding of the referee, supported by evidence, to have been forged, the purport of the record of it is that it was duly executed and acknowledged, and without the proof of extrinsic facts to the contrary it would be deemed valid and effectual as a mortgage upon the premises described in it. The presumption of validity thus arising from the record and requiring extraneous evidence to overcome it and to show that it was falsely there represented, presents a case for the exercise of equitable jurisdiction for its cancellation as a cloud upon the title to land. (*Remington Paper Co.* v. *O'Dougherty*, 81 N. Y. 474; *Sullivan* v. *Finnegan*, 101 Mass. 447.) These views lead to the conclusion that the case presented was properly one within the statute for the maintenance of an action by the personal representative of Ryan, deceased, to relieve the premises from the cloud which the alleged mortgage, by the record, purported to have created. And that being so the plaintiff, as a creditor, on the refusal of the administrator to bring the action was at liberty as it did to do so, making her a party defendant with a view to the same equitable relief which may have been awarded if she had been the party plaintiff. (*Bate* v. *Graham*, 11 N. Y. 237; *Greaves* v. *Gouge*, 69 id. 154; *Crouse* v. *Frothingham*, 97 id. 105.) The facts essential for that purpose appear by the record before us to have been alleged in the complaint and proved on the trial.

The main ground upon which the conclusion in the General Term was reached, as appears by the views expressed in the leading opinion there delivered, was that the docketing of the

plaintiff's judgment in Albany county and the return unsatisfied of execution upon it, were essential to support the action. Since that decision it has been held that such requirement is not applicable to a case of this character as the action is not in the nature of a creditor's bill. (*Harvey* v. *McDonnell*, 113 N. Y. 526; *National Tr. Bank* v. *Wetmore*, 124 id. 241.) No other question seems to require consideration.

The order should be reversed and judgment entered upon the report of the referee affirmed.

All concur, except FOLLETT, Ch. J., and PARKER, J., not voting.

Order reversed and judgment affirmed.