(20 Misc. Rep. 488.)

## NILL et al. v. PHELPS.

(Supreme Court, Special Term, Jefferson County. June, 1897.)

1. RECOVERY OF DECEDENT'S ASSETS—CREDITORS' SUIT.

     One P., when at the point of death, and in such a sick and enfeebled condition as to be without mental capacity to transact business, or to understand what he was doing, executed a conveyance to his wife and brother, upon their suggestion, in payment of or as security for debts due them. Such conveyance, with others previously made to the same parties, stripped P.'s estate of all means of paying other debts, and left it insolvent. P. died, and his widow became his executrix. Creditors of P. brought suit against her and P.'s brother to set aside the conveyance. *Held*, that the action could not be maintained as one to set aside a transfer in fraud of creditors, under Laws 1858, c. 314, § 1, as amended by Laws 1894, c. 740, since a fraudulent intent would be required in that case, and P. was incapable of harboring any intent; but it could be maintained under section 2 of the same act, to recover property of the deceased taken by the defendants in fraud of the rights of creditors.

2. SAME.

     *Held*, further, that as the executrix of P. was the person against whom an action for the purpose might be brought, the creditors might bring it, in their own names, without prior notice or request to her, and without obtaining judgments on their claims.

Action by John Nill and others against Emma E. Phelps, individually and as executor of Henry B. Phelps, to have certain conveyances by deceased adjudged fraudulent. Judgment for plaintiffs.

S. S. Trowbridge, A. L. Chapman, W. M. Rogers, and H. A. Purcell, for plaintiffs.

Hannibal Smith and G. S. Hooker, for defendants.

HISCOCK, J. This action is brought in behalf of plaintiffs, as creditors of one Henry B. Phelps, deceased, and in behalf of other creditors interested in his estate, in substance to have certain transfers executed by said Phelps to the defendants adjudged fraudulent and void, and to have said defendants account for the property covered thereby, or the proceeds thereof. Plaintiffs and other creditors held claims against said deceased, Phelps, at the time of his death, amounting to a large sum. Phelps was insolvent when he died, and, if the transfers complained of are allowed to stand, there will concededly be practically nothing out of which to pay said creditors and claims. The action was framed, and plaintiffs' contentions upon the

trial based largely, upon section 1, c. 314, Laws 1858, as amended by chapter 740, Laws 1894, providing:

"That any executor, administrator, receiver, assignee or trustee of an estate, or the property and effects of an insolvent estate, * * * or individual, may, for the benefit of creditors or others interested in the estate or property so held in trust, disaffirm, treat as void, and resist all acts done, transfers, and agreements made in fraud of the rights of any creditor. * * * And any creditor of a deceased insolvent debtor, having a claim or demand against the estate of such deceased debtor exceeding in amount the sum of $100, may, in like manner, for the benefit of himself and other creditors interested in the estate or property of such deceased debtor, disaffirm, treat as void, and resist all acts done and conveyances, transfers and agreements made, in fraud of the right of any creditor or creditors, by such deceased debtor, and for that purpose may maintain any necessary action to set aside such acts, conveyances, transfers or agreements," etc.

And the action still further was based by plaintiffs' counsel upon the theory under said section that the conveyances in question were executed or procured from said deceased, Phelps, during the few days preceding his death, and when he had become incompetent to make the same; that, therefore, even though they were executed for a valid consideration, and were without other fraud or vice, still, he being incompetent to execute the same, they were invalid, and of no effect, and they, withdrawing property from his insolvent estate which otherwise would be appropriated to the payment of his debts, were fraudulent within the provisions of the act quoted, and should be set aside. Upon the trial and final submission of the case some other suggestions of fraud have been made which touched the consideration of the transfers, and which suggest that there was a conspiracy upon the part of the defendants to cover up all of the property of the deceased man beyond what was necessary to secure the debts due them, and in that way to get it away from the plaintiffs and other creditors. I do not think, however, that under the pleadings and evidence this action can be sustained upon either of these latter theories, but that it must be upheld, if at all, upon the theory, in substance, that the deceased, Phelps, at the time of the execution of the transfers, was, and ever since he and his estate have been, insolvent; that the defendants have certain property of his which they claim and are entitled to solely and only by virtue of said transfers; that the latter were, in form, executed by him when he was incompetent to do so, and are, therefore, invalid, and the withdrawal of property thereunder is a fraud upon his creditors which can be remedied in this action; and I shall consider the case upon that theory.

It was undisputed that plaintiffs, at the time of the execution of the transfers in question, had valid claims against the deceased, Phelps, for upwards of $100, which have never been paid or disputed; also that at and ever since that time he and his estate have been insolvent, and that said purported conveyances, if allowed to stand, withdraw practically all his assets from the payment of creditors. The conveyances attacked herein consisted of three chattel mortgages, executed, respectively, to the defendants Emma E. Phelps, Austin A. Phelps, and one Anna M. Phelps (who has since assigned to Austin), March 7, 1896; also of a transfer to the defendant Emma

E. Phelps of a certain lease and land contract, dated the same day, but as a matter of fact executed two days later. The grantor was a man living in the village of Sacketts Harbor. The defendants Emma and Austin were, respectively, his wife and brother, and Anna, to whom the third chattel mortgage above mentioned was executed, was his sister. On or about Tuesday, which, if I remember rightly, came upon March 3d, Phelps was taken sick with what is claimed by the plaintiffs to have been typhoid fever. The defendants originally admitted by their answers that this was the disease, but upon the trial disputed that fact, and claimed it was pneumonia. Whatever was the disease, he became very sick, growing steadily worse until the time of his death, seven or eight days subsequently. Friday evening, after he was taken sick, his brother, the defendant Austin, as claimed, at his request, went to Watertown, and procured a lawyer, who returned with him to Sacketts Harbor, where the chattel mortgages in question were prepared and executed at about 4 or 5 o'clock upon Saturday morning. They were executed to secure debts due, respectively, to the grantees therein named. As hereinbefore indicated, I do not think that any successful attack has been made upon the validity of the indebtedness thereby to be secured. The defendant Emma Phelps did have other security for the same indebtedness. Vigorous contest has been made by the plaintiffs and defendants, respectively, to demonstrate that Phelps was or was not out of his mind, and incompetent to execute these transfers, at the time in question. Without attempting to review in detail the evidence which leads me to form that conclusion, for that would involve substantially a recapitulation of all of the evidence given, I do not feel quite justified in holding that the plaintiffs have, by a preponderance of evidence, shown that Phelps, at the time when he executed the chattel mortgages, did not possess sufficient life and intelligence to fairly and substantially appreciate what he was doing. There can be no doubt but what, as claimed by plaintiffs' witness Dr. Ladd, he was both then and before that time extremely sick, and undoubtedly more or less weak; but to adopt plaintiffs' theory I must disregard the evidence of the attorney who prepared the mortgages, and of other witnesses outside of the interested parties, in regard to what he said and did at that time, and, as I say, I do not feel justified in doing this. I do not think that the element of duress or undue influence has much place in this case. It is the usual, if not the necessary, incident of such theory that the act in question is so unnatural or unusual or opposed to prior intentions as to create, or at least make room for, the presumption that some stronger will has compelled a weaker one to do what it did not want to. Ordinary experience, however, indicates that the tendency of a man to take care of his family in preference to an outside creditor is so natural as not to require any explanation in the form of the theory of coercion. Therefore, while I have no doubt that the defendants talked with the grantor about making these conveyances, I do not believe that it was necessary for them to take advantage of his enfeebled condition, and coerce him into making them, but that practically the only question in this connection is whether at the time he made

them he had intelligence enough to appreciate his acts; and upon that question, as before stated, I feel compelled to find in favor of the defendants. It is true that the hour at which the conveyances were executed was unusual, but that may be explained upon the very theory urged by plaintiffs that Phelps was growing every moment weaker and nearer death, and it was appreciated that the execution of the instruments, if to be made at all, must be hurried along.

So far as the purported assignments, respectively, of the lease and land contract upon the following Monday morning are concerned, I reach a different conclusion. The other evidence in the case is not lacking to lead me to believe that at that time Phelps had ceased to have mental capacity to transact any business; but, if there were no other evidence in the case upon this subject than the signatures to these papers, I could hardly help finding, upon a comparison of them with his other signatures, including those to the instruments hereinbefore considered, that at that time he had fairly entered upon the period of dissolution. Holding this opinion that he was incompetent to execute said last-mentioned instruments, I pass to the consideration of whether plaintiffs can in this action secure the relief which they desire.

I have already quoted the statutory provision upon which the plaintiffs seemed to mostly rely in bringing this action, but I do not believe that it entitles them to maintain it. It seems to me that where that provision gives creditors the right to disaffirm, treat as void, etc., all conveyances, transfers, and agreements of the estate or property of a deceased creditor "made in fraud of the right of any creditor or creditors by such deceased debtor," it is treating of cases where the debtor has made a transfer with a fraudulent intent, purpose, and mind, and that it means a case where the debtor has mind and capacity enough to harbor a fraudulent intent. This is not that case, for the very basis of the action is that the debtor not only did not have any fraudulent intent, but that he did not have mental capacity enough to form or harbor any such purpose. While, however, plaintiffs have, as stated, seemed to mostly rely upon this provision, I do not think that either upon their complaint or evidence they are absolutely limited to it, but that they invoke other law and other principles, if available for sustaining their action.

Section 2 of said chapter 314, Laws 1858, provides:

"That every person who shall, in fraud of the rights of creditors and others, have received, taken, or in any manner interfered with the estate, property or effects of any deceased person, * * * shall be liable in the proper action to the executors, administrators, receivers or other trustees of such estate or property, for the same, or the value of any property or effects so received or taken, and for all damages caused by such acts to any such trust estate."

In this case the defendant Emma Phelps has taken property of the deceased. Her only justification for taking the same is the transfers which were in form executed by him when he was utterly incompetent to do so, as she must be presumed to have known, and which, therefore, are invalid. They operate as a fraud upon the rights of plaintiffs and other creditors, because they withdraw just so much property from an insolvent estate which otherwise would be appro-

priated to the payment of debts, and it seems to me, therefore, that a case is presented within the provisions of said statute. Bank v. Levy, 127 N. Y. 549, 28 N. E. 592.

It was alleged in the complaint, and undisputed upon the trial, that plaintiffs, before the commencement of this action, requested the defendant Emma Phelps to relinquish her claims under the instruments above mentioned, and that she has refused so to do. I think it is too well settled to require citation of authorities that, the executrix herself being the individual against whom, under the provisions of the statute quoted, an action might be brought, the creditors, without notice or prior request, would be entitled to bring this action. This action, in this respect, does not seem to be different from the one just cited. In order to maintain any action or proceeding in the nature of a creditors' action, it would be necessary for plaintiffs to secure judgment upon their claim. Section 1 of the act of 1858, as amended by the Laws of 1894, expressly provides that it shall not be necessary so to do preliminary to bringing an action under that section. Independent of such express provision, I do not think that such step was necessary as a prerequisite to the maintenance of this action by plaintiffs. Bank v. Levy, supra; Harvey v. McDonnell, 113 N. Y. 526, 21 N. E. 695. Considerable evidence was given with reference to the disposition by defendants, especially Austin Phelps, of the personal property covered by the chattel mortgages above mentioned, and to demonstrate that such disposition was illegal, and made with a purpose of avoiding proper and legal sales of the property herein involved. Such acts, if illegal and improper, are not within the limit of remedies allowed by this action, but would be the subject of relief elsewhere. Findings and decree in accordance herewith may be settled, if not agreed upon, upon three days' notice, and allowing plaintiffs costs against the defendant Emma E. Phelps.

Ordered accordingly.