(118 App. Div. 579)

HAMILTON v. FLECKENSTEIN et al.

(Supreme Court, Appellate Division, Fourth Department. March 6, 1907.)

TRIAL—FINDINGS OF FACT—INCONSISTENCY—BONA FIDE PURCHASER—NOTICE.
    The findings on the issue whether a mortgage was taken by M. from F. on a house in good faith and without notice of the interest of H. in the premises under a contract for purchase from F. are inconsistent, so that a judgment for M. cannot stand; one finding being that the mortgage was

executed and delivered to M. for a good and valuable consideration, and was accepted by him in good faith and without notice of the contract of H., and other findings being that during the month preceding the taking of the mortgage H. called at the office of M., who was furnishing F. the lumber for building said house, and told M. it was being built for him, and made complaint of the lumber being furnished, and was authorized by M. to have M.'s foreman make the correction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 946, 947.]

Kruse, J., dissenting.

Appeal from Special Term, Monroe County.

Action by James M. Hamilton against Frank V. Fleckenstein, impleaded with William S. Morse and others. From a judgment in favor of defendants Morse and others, dismissing the complaint as to said defendants, after a trial, plaintiff appealed, and judgment was affirmed without opinion. 100 N. Y. Supp. 1119. Thereafter a reargument was granted. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Hugh O'Brien, for appellant.
John P. Morse, for respondents.

ROBSON, J. Appellant's motion for reargument was founded upon the claim that certain findings of fact, made by the court at his request, were inconsistent with and directly contradicted the material finding of fact, made by the court, upon which respondents' right to the judgment, directed in the court's conclusions of law, was based.

The only question presented to the court at this time is whether the findings to which our attention is now directed are so diametrically opposed as to be necessarily irreconcilable. If these findings, whether made by the court as its own conclusions of fact, or at the suggestion of the unsuccessful party by requests to find, are inconsistent to that extent, and the determination of the facts involved in the findings is material and necessary to uphold and establish the right of the properly successful party to judgment in the action, then it follows that, the appellant being, of course, entitled to the benefit of the findings most favorable to his contention, the judgment stands without sufficient facts as a basis for its rendition, and should be reversed. Redfield v. Redfield, 110 N. Y. 671, 18 N. E. 373; Nickell v. Tracy, 184 N. Y. 386, 77 N. E. 391.

The facts involved in this controversy are neither complicated nor obscure. In 1902 defendant Fleckenstein, besides one lot on Chili avenue, at the end of Darien street, owned four other lots, situate on the latter street, in the city of Rochester. Upon each of these lots in the late summer or fall of that year he began the erection of a dwelling house. Some considerable part of the lumber used in the construction of these houses he purchased of the firm of William B. Morse & Sons, which firm the respondents now represent. The erection of the dwelling house on the Darien street lot, known as "Lot 14," which is the lot and premises in question in this action, was in pursuance of a contract made on the 14th day of August of that year by Fleckenstein with the appellant, Hamilton. By this contract Fleckenstein agreed, for the consideration to be paid him as stated in the contract,

to sell and convey to Hamilton these premises together with the house, which he was, as provided in the contract, to build thereon and complete by November 15, 1902. The appellant, Hamilton, carrying out in full his part of the contract, before the mortgage hereinafter referred to was given, had paid to Fleckenstein, as required by said contract, a considerable amount of the purchase price of the premises. The respondent William S. Morse during all this time had the general management of the business of the Morse partnership; and on or about November 16, 1902, he required Fleckenstein to give security for the firm's claim against him for lumber furnished, which then amounted to $2,700. After some negotiation it was agreed that one-half of that sum should be secured to the firm by Fleckenstein's note, payable one month after date, with a mortgage on lot 14 as collateral security therefor, and the remaining one-half by his two-months note, with a mortgage on lot 16 as collateral. Lot 16 was at that time also under contract by Fleckenstein to another person, whose rights are, however, not in any way involved in this action. Fleckenstein's note, with the mortgage on lot 14, were thereupon executed and delivered to Morse for the firm, and the mortgage was by him recorded in the clerk's office November 18, 1902. Hamilton's contract was not recorded till long after the recording of the Morse mortgage, and it was never completed by Fleckenstein, who has since been adjudged a bankrupt.

Hamilton brings this action to have his contract with Fleckenstein declared to be a lien upon the premises described therein, superior to the liens of any of the defendants in the action, including the Morse mortgage, and to foreclose his lien on the premises in the usual course. Priority of record of respondents' mortgage, and that it was given for a valuable consideration, were not controverted on the trial. The litigated issue was whether the mortgage was taken in good faith and without notice of appellant's interest in the premises. Upon this issue the court has found:

"Third. That said mortgage was executed and delivered to the mortgagees therein named for a good and valuable consideration, and was accepted by them in good faith and without notice of the contract set forth in the complaint herein, or of any other claim or lien of plaintiff's affecting said premises."

But he has also found, at appellant's request:

"Tenth. That during the month of October, 1902, said James M. Hamilton called at the lumber office of said William B. Morse & Sons; that he thereupon met William S. Morse, with whom he was acquainted; that he had a conversation with said William S. Morse regarding the quality of the lumber which was being delivered by said William B. Morse & Sons for the construction of the house on the above-described premises; that in the course of the conversation he told said William S. Morse that the house which was being built on said lot 14, Darien street, was being built for him, said Hamilton.

"Eleventh. That thereupon the said William S. Morse instructed said Hamilton to go to the foreman in the lumber yard of said William B. Morse & Sons and explain to the said foreman what he wished; that thereupon said Hamilton did go to said foreman, told him that said house on said lot 14, Darien street, was being built for him, said Hamilton; that the specifications of the contract were for second-grade pine siding, and that whitewood siding was being delivered, and he, the said Hamilton, wished said siding to be changed to second-grade pine; that the foreman agreed to make said change; and that thereafter second-grade pine siding was delivered to the said house, No. 14

Darien street, by said William B. Morse & Sons, and the whitewood siding theretofore delivered was taken away."

There is sufficient evidence to support these two findings, and, if effect is to be given them, no other conclusion can be reached than that, in the month preceding that in which respondent's mortgage was taken, their general manager was notified by Hamilton that the house on the premises in question was being built by Fleckenstein for him, and that the former had such an interest in the premises that he, at least, had the right to, and did, insist that the material used in the erection of the house should conform to specifications in the contract under which Fleckenstein was then building the house for him. Though it is not specifically found as a fact by the trial court, it is yet worthy of notice that Fleckenstein testifies he told Morse in the interview, in which Morse demanded security, which was the day before the mortgage in question was given, that both lot 14 and lot 16 were under contract. Morse does not expressly deny that he was so informed by Fleckenstein at that time, though he does say that nothing of the kind was said on the next day when the mortgage was given. It is true that Morse was not told, either by Hamilton or Fleckenstein, prior to the time the mortgage was given, the extent or nature of Hamilton's interest in the premises; but that he then had information that Hamilton did claim some interest therein is equally clear. What this interest was an inquiry either of Hamilton or of Fleckenstein would have disclosed. Morse made no inquiry whatever, notwithstanding his knowledge that Hamilton asserted some interest in the premises. This information would, it seems, have made a prudent man alert to ascertain what that interest was, or was, at least, sufficient to demand of him reasonable effort and inquiry to obtain the further information as to the interest claimed which was apparently ready at his hand.

If the facts which were brought to Morse's attention were sufficient to "put a prudent man on inquiry," then, whether he made the inquiry or not, respondents must necessarily be held chargeable with notice of all facts which reasonable inquiry would have surely disclosed. Williamson v. Brown, 15 N. Y. 354; Brumfield v. Boutall, 24 Hun, 451. It follows that the necessary effect of the findings, embodied in the tenth and eleventh requests to find, is that respondents did have implied actual notice of appellant's interest in the premises, and for the purposes of this appeal these findings in favor of the unsuccessful party must control, rather than the contradictory finding that the mortgage was accepted by respondents in good faith and without notice of any interest, claim, or lien of plaintiff affecting the premises.

On the argument it was suggested by respondents' counsel that the trial court's acquiescence in the tenth and eleventh requests to find was due to inadvertence, which was in a measure explained by the fact that the minutes of the evidence were not before the court at the time the requests to find were passed on. Whether or not these findings would have been made by the court, if attention had been called with greater precision to their statements and the evidence in their support, we are, of course, unable to determine. The present discus-

sion will doubtless on another trial result in a harmonious decision of all material facts. We express no opinion as to the merits. The judgment appealed from should be reversed, and a new trial granted, with costs to the plaintiff to abide the event.

· Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur, except KRUSE, J., who dissents.

KRUSE, J. (dissenting). It is not proposed to reverse this judgment because it is against the weight of evidence, or on account of any infirmity in any of the proceedings harmful to the appellant, save only that one of the findings of the trial judge contained in his decision is inconsistent with another finding of fact made at the request of appellant. I think the two findings are not inconsistent. The tenth finding, made upon the request of the appellant and relied upon by him for reversing the judgment, is to the effect that during the month of October, 1902, the plaintiff, in a conversation with William S. Morse, one of the defendant mortgagees, regarding the lumber which Morse's firm was furnishing, stated to Morse that the house upon the premises in question was being built for him. The mortgage was not taken until the 17th day of November, 1902, so that at the time when the conversation referred to took place Morse was not interested in any way in the title to the premises, nor was he called upon to make inquiry; nor does it appear that at that time he even contemplated taking any mortgage upon the premises. It is true that if, at the time Morse took the mortgage, his attention had been called to this conversation, or if it appeared that he still had in mind the information given him when the lumber was being sold, he would be chargeable therewith. Foulks v. Reed, 89 Ind. 370, 374. It seems to me, however, that the third finding contained in the decision negatives that fact, for there it is specifically found that the mortgage was executed and delivered to the mortgagees for a good and valuable consideration, without notice of the contract, or of any other claim or lien of the plaintiff's affecting said premises.