(164 App. Div. 304)

NICHOLS v. SMITH.

(Supreme Court, Appellate Division, Fourth Department. November 11, 1914.)

1. FRAUDULENT CONVEYANCES (§ 172*)—BENEFICIAL OWNER—HEIRS—RIGHTS.

Where land is conveyed to a third person in order that the beneficial owner may escape responsibility for the care and maintenance of his wife in an insane hospital, and to prevent her acquiring any dower rights in the property, neither the beneficiary nor his heirs, who are in privity with him as to his interest in the land, can enforce their equitable title against the holder of the legal title to a greater extent than he is willing to recognize.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 523–529, 542; Dec. Dig. § 172.*]

2. COMPROMISE AND SETTLEMENT (§ 19*)—VACATION—FRAUD—DAMAGES.

After the death of plaintiff's ancestor, she claimed that, except as to a fifth interest in 113.50 acres of a tract of 191.77 acres, the land belonged to her ancestor, and had been conveyed to defendant's testator to hold in trust. Negotiations were then instituted for settlement, in which the property was valued at $9,588.50, and testator was allowed $1,135 for his one-fifth interest in the 113.50 acres, and a settlement arrived at on that basis, and a release of plaintiff's interest in the property executed to him, after which he sold the property for $13,500. *Held* that, in case plaintiff was entitled to have the release set aside for fraud, the damage

which she and her testator suffered by reason of the fraud could not exceed the amount of which they had been defrauded, which would necessarily be less than $1,135.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 67, 71–75; Dec. Dig. § 19.*]

3. COMPROMISE AND SETTLEMENT (§ 19*) — VACATION — FRAUD — VALUE OF PROPERTY.

Where, throughout negotiations looking to a settlement of plaintiff's interest in a farm and personal property in the hands of defendant's testator, plaintiff was represented by her husband, a careful and experienced business man, and he testified that by inquiry among people he obtained knowledge as to the value of the farm, and a settlement was arrived at on a basis of $9,588.50, though defendant's testator was unwilling and emphatically refused to part with his interest on that basis, the fact that he thereafter sold the property for $13,500 did not show that the settlement was so fraudulent as to justify its vacation.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 67, 71–75; Dec. Dig. § 19.*]

4. TRUSTS (§ 225*)—ACCOUNTING—MORTGAGE.

Where title to an entire farm containing 191.77 acres was conveyed to defendant's testator for the benefit of plaintiff's ancestor, testator owning in his own right a one-fifth interest in 113.50 acres, and when title to the latter parcel was acquired testator and his wife executed a mortgage thereon to secure payment of $2,000 and interest, which sum, or a large part of which, testator personally paid, his executrix was entitled to credit for such payment in an accounting concerning the adverse interests in the property.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 322; Dec. Dig. § 225.*]

5. DESCENT AND DISTRIBUTION (§ 91*)—PERSONAL CLAIMS—ACTION BY NEXT OF KIN.

An action cannot be maintained by the next of kin of a deceased person to recover personal claims which accrued against another in the decedent's lifetime.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 359–381; Dec. Dig. § 91.*]

6. DESCENT AND DISTRIBUTION (§ 52*)—RIGHTS OF WIDOW.

Where a decedent left a widow, a brother, a sister, and nieces as his sole next of kin, the widow was entitled to one-half of the surplus of his personal property after payment of his debts, and to the whole of the residue, if it did not exceed $2,000, including a sum deposited in a bank to the joint credit of decedent's brother and plaintiff, decedent's niece, as a part of decedent's personal estate, as provided by Decedent Estate Law (Consol. Laws, c. 13), § 98, subd. 3.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 83, 135–140, 144, 147–149, 151–158, 161–167, 169–171, 296–308; Dec. Dig. § 52.*]

Appeal from Special Term, Cattaraugus County.

Action by Addie L. Nichols against Libbie D. Smith, individually and as executrix of the will of David D. Smith, deceased. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Edwin A. Scott, of Springville (Scott & King, of Springville, of counsel), for appellant.

John K. Ward, of Olean, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ROBSON, J. Loren D. Smith, deceased, and David D. Smith, defendant's deceased husband and testator, were brothers. The former died intestate June 15, 1909, and the latter died April 22, 1912, leaving a last will and testament, of which the defendant is the sole executrix. Loren D. Smith left him surviving no descendant or ancestor in the direct line, and his heirs at law and next of kin were his brother, David D. Smith, a sister, Emeline Smith, since deceased, and the plaintiff, Addie L. Nichols, who was the only child of a deceased sister of Loren D. Smith. It also appears from the evidence, and from statements in the brief of counsel for each party to this appeal, that he left him surviving a widow, Emma Smith, who is an incompetent person. At the time of the trial she was, and for years prior thereto had been, an inmate of a state hospital, and was there maintained at the charge of the state. She was not made a party to this action, nor were her interests in the property, which is the subject-matter of this action, in any manner considered, protected, or provided for on the hearing or decision thereof. Emeline Smith died July 31, 1910, leaving a will, thereafter duly probated, by which she bequeathed and devised all her property to Addie L. Nichols, the plaintiff herein.

From the year 1888 down to the time of his death Loren D. Smith was in the possession of, and controlled and managed, a farm, which at the time of his death consisted of 191.77 acres of land. He also owned certain personal property thereon, which was used in the operation of the farm. During all this time the legal title to the farm was in his brother, David D. Smith. The evidence sufficiently establishes that David D. Smith held the legal title to this land, except as to a one-fifth interest in 113.50 acres thereof, of which it is conceded he was the real owner, under some agreement with Loren D. Smith, the terms of which do not definitely appear. There is, however, evidence from which it inferentially appears that the legal title to the premises had been taken in the name of David D. Smith to serve some ulterior purpose of the parties, or one of them, though it was at all times understood that Loren D. Smith was the beneficial or equitable owner thereof. This fact is disclosed principally by written admissions of David in letters, written after Loren's death, and other statements in documents thereafter executed by the interested parties. From these admissions and statements, and the other facts in relation to the situation and mental condition of Loren's wife, above referred to, an inference might, perhaps, properly be drawn that his purpose in permitting the legal title to the land to be taken in David's name was to escape responsibility for the care and maintenance of his wife, as well as to prevent her acquiring any dower rights in the property.

[1] If this was in fact the purpose of the transaction, then Loren in his lifetime could not have successfully asserted, as against David's legal title, that he had an equitable title to the premises to an extent greater than David was willing to recognize. After Loren's death, his heirs, being in privity with him as to his interest in the land, would be in like case. 1 Story's Equity Jurisprudence (11th Ed.) § 371; Wait on Fraudulent Conveyances (3d Ed.) § 395 et seq.; 20 Cyc. 612. The right which an administrator of the estate of Loren D. Smith might

have, when appointed, to maintain an action to have an equitable title to the land declared to have been in his intestate, if such interest therein were necessary for the protection of the rights of creditors of the intestate, depends on other principles. Nat. Bank of West Troy v. Levy, 127 N. Y. 549, 28 N. E. 592. The attention of the trial court does not seem to have been directed to this feature of the case; and it has been found that, though the legal title to these premises was in David, the equitable title thereto was in Loren during all the time in question. In view of the fact that the judgment must be reversed and a new trial directed for other reasons, which will be hereafter noted, further consideration of this branch of the case is not necessary.

Shortly after the death of Loren D. Smith a claim in behalf of Emeline Smith and of this plaintiff was made to David D. Smith, to the effect that each of them, as an heir of Loren, had an equitable interest in and title to a share in this real estate. Considerable correspondence and personal negotiation in reference to the matter then ensued, which resulted in the payment by David to each of these heirs of the sum of $2,346.50, which it was then agreed was the sum to which each of them was entitled as the value of her interest in the personal property on the farm, concededly a part of Loren's estate, and also of her equitable interest in the farm itself. Concurrently with these payments each of these heirs delivered to him a written agreement and obligation under seal, by one of the terms of which, in consideration of the payment above referred to, she released and quitclaimed to David "all her right, title, and interests, of every name and kind in and to the above-described farm (which was the real estate hereinbefore referred to), live stock, and sugar tools, and all the crops grown on said farm and now remaining thereon." These instruments are dated September 9, 1909. It appears that, in arriving at the value of the several shares and interests in this property, the farm, together with the personal property thereon, was estimated at $9,588.50, being at the rate of about $50 per acre. On March 17, 1911, David sold the farm, with the personal property thereon, for the sum of $13,500.

The trial court has found that these agreements, by which each of these heirs in terms released and quitclaimed to David her interest in this property, were procured by the fraud of David, in that: First. He then falsely represented to each of them that during the period of more than 20 years preceding the agreement he had received none of the proceeds of the farm for the use of his one-fifth interest in 113½ acres thereof, which interest concededly he owned in his own right, which statement was false, and known by him to be false, and that each of them relied upon such statement. Second. That he falsely represented to each of them that the farm and personal property thereon was worth only the sum of $9,588.50, less $202.50 then due on a mortgage thereon; that he desired to purchase the same at that price, but refused to sell the same to plaintiff at that price; that plaintiff and Emeline Smith were not acquainted with the value of the property, but that he was well acquainted with the value thereof, and knew it to be much greater than the sum above mentioned, and made such statements and representations as to its value for the purpose of de-

ceiving and misleading each of them; and that they, each believing and trusting in and relying upon such false statements and representations, and deceived thereby, executed the agreements above referred to. For these reasons the court found that they were not bound by their several agreements of release and quitclaim, and, having further found that the true value of the property was at that time $13,500, being the sum for which David thereafter sold it, charged defendant with the total difference between what these respective interests would be, if computed at that value, and the amount David had paid to each of them. This difference, amounting to $3,242.01, forms a part of the amount for which judgment against the defendant was directed.

[2] As to the first ground upon which this agreement was set aside, it appears that, in computing the value of the several interests of the parties at the time of the agreement, an allowance was made to David D. Smith for the use of his one-fifth interest in the 113½ acres of an amount equal to the estimated value of his one-fifth interest in the property, being, as then agreed, the sum of $1,135. If, therefore, this agreement of release is to be set aside on that ground alone, then the damages, which plaintiff and her testator have suffered by reason of that fraud on the part of David D. Smith, could not exceed the amount of which they had thereby been defrauded, which would necessarily be less than $1,135.

[3] The finding as to the second ground of fraud seems to be against the weight of the evidence. It clearly appears that plaintiff and her testator, throughout the negotiations which resulted in the agreements above referred to, and at the time they were made, were actively represented by plaintiff's husband. He apparently acted as their agent, and personally received the money paid by David at the time the agreements were delivered. He seems to have been a careful and experienced business man. On his examination, as a witness at the trial, in response to the question, "From what source did you obtain your knowledge as to the value of that farm?" he answered, "By inquiry around amongst the people." He does say that at the time of the settlement David D. Smith told them that the property was worth only $9,000. But it further appears that David was unwilling, and emphatically refused, to part with his interest in the farm on the basis of that price. So far as evidence was given as to the value of the farm before the sale by witnesses whom plaintiff herself called, it does not appear that it was worth much, if anything, in excess of the value at which it was then treated by the parties. No objection to the agreements on this ground seems to have been made, either by plaintiff or her testator, until after David had sold the farm some 1½ years later at an increased price. Under all the circumstances, it seems that no such confidential relation between the parties existed, nor was there such a reliance by the other parties on the statements as to value, which David D. Smith made, as would serve to prevent the application of the well-recognized rule that fraud cannot be predicated solely on expressions of opinion as to values.

[4] It appears that, when the title to the 113½-acre parcel above referred to was taken in the name of David D. Smith, a mortgage was

given thereon by David D. Smith and wife to one Sarah Lammie as mortgagee, to secure the payment of the sum of $2,000 and interest. The court has found, at defendant's request, not only that the mortgage was given, but also "that said David D. Smith paid the said mortgage to Sarah Lammie in full, with the interest thereon, and procured the same to be discharged of record." Although defendant is entitled to the benefit of this finding, though it may be inconsistent with other findings as to the same matter (Elterman v. Hyman, 192 N. Y. 113, 84 N. E. 937, 127 Am. St. Rep. 862, 15 Ann. Cas. 819; Hamilton v. Fleckenstein, 118 App. Div. 579, 103 N. Y. Supp. 631), yet the court has failed to allow defendant anything for any payment made by David D. Smith, though it appears without contradiction that payments thereon were made by him personally, though they may not have been, as the court found as stated above, to the full amount of the mortgage and interest.

[5] There is also included, as part of the amount for which plaintiff has recovered her judgment herein, the sum of $1,933.80, the same being, as expressed in the findings of the court, "two-thirds of the sum of $2,900.72, the same being the sum received from the proceeds of the farm and for moneys received by David D. Smith from the proceeds of the farm and for moneys received by David D. Smith from the sale of right of way to the railroad company." The specific items making up the above amount, of which plaintiff is awarded two-thirds, are found by the trial court as follows:

"That during the period since 1888 and up to the 15th day of June, 1909, David D. Smith received from the proceeds of said farm and from sales of milk, etc., the following sums:

| | |
|---|---|
| From sales of lands to Susquehanna & Buffalo Railroad Company | $1,000 00 |
| Of supplies from farm........................................... | 833 85 |
| Cheese checks from Simons...................................... | 238 97 |
| Cheese checks from Jones....................................... | 66 00 |
| Milk checks from Merrill Soule Company........................ | 761 90 |
| Making a total of............................................. | $2,900 72 |

—and took the same to his own use and benefit."

It appears from this finding that the claim for the recovery of each one of these items accrued prior to the death of Loren D. Smith; and they were therefore personal property of his estate. This being so, it follows that an action could not be maintained by one of his next of kin to recover the demand. Palmer v. Green et al., 63 Hun, 6, 17 N. Y. Supp. 441; Denham et al. v. Cornell, 67 N. Y. 556.

[6] The further finding of the trial court that one-third of said sum became, on the death of Loren D. Smith, the property of Emeline Smith, and one-third thereof the property of plaintiff, is clearly erroneous for another reason. It appears, as set forth above, that Loren D. Smith left a widow, him surviving, and a brother, sister and niece, as his sole next of kin. In such case, as provided by subdivision 3 of section 98 of the Decedent Estate Law (Laws 1909, c. 18, being chapter 13 of the Consolidated Laws), his widow was entitled to one-half of the surplus of his personal property after payment of his debts and to the whole of the residue thereof, if it did not exceed $2,000. The evidence, so far as it discloses the amount of the personal estate left by

Loren D. Smith, indicates that the widow would be entitled to receive the whole of the surplus thereof after the payment of his debts.

For the same reasons above advanced, the award to plaintiff of the further sum of $66.66, being two-thirds of the sum of $100, which it is alleged David D. Smith agreed to deposit in bank to the joint credit of himself and plaintiff, as a part of the personal estate of Loren D. Smith, deceased, for an undisclosed purpose, was erroneous.

The judgment should be reversed on the law and facts, and a new trial ordered, with costs of this appeal to appellant to abide event. All concur.